The Pennsylvania Company v. McCaffrey, Administratrix.

No. 14,002.

The Pennsylvania Company v. McCaffrey, Adminis-
tratrix.

Negligence.—*Sudden Danger.—Conduct of Imperiled Person.—Con-
tributory Negligence.*—If one acts naturally in a case of sudden and
instant peril put on him by another, and is injured, he is not guilty
of negligence, although afterwards, out of the presence of danger,
with time to reflect, and in the light of all the known facts, it may
appear that another course of conduct might have led to safety.

Railroad.—*Master and Servant.—Section Foreman.—Sudden Peril.*—
A section foreman who, after a train has passed, orders his
hand car placed upon the track, and while it is being so placed,
suddenly discovers that the train, without warning is backing down
the track, and hurriedly attempts to get the hand car out of the way,
and then, being unable to do so, attempts to step off the track and
in doing so falls and is killed by the hand car being pushed upon
him by the train, is not guilty of negligence.

Same.—*Excessive Hours of Employment.—Railroad Company Bound to
Know that Employes Will Leave Train to get Food.*—Where a railroad
company so arranges the time schedule for one of its trains that
the train crew are required to work nineteen hours consecutively
each day, without relief or provision for food, the company is
bound to know that the men will leave the train at intervals for
food, and it will be held to assent thereto, and their so leaving the
train for such a purpose is not negligence on their part.

Same.—*Railroad Company Must Provide Enough Servants at all Times.*
—It is the duty of a railroad company to provide a sufficient force
for the proper management of its trains, and when, by reason of
the number of hours of continuous service some of the trainmen
are habitually compelled by hunger to temporarily leave the train,
it is the duty of the company to either stop the train until their re-
turn or to supply their places with other competent men, and for an
injury resulting from a breach of this duty it is liable.

Same.—*Liability of Railroad Company to Section Foreman.—Case
Stated.*—A railroad company which requires such continuous ser-
vice from a train crew as to be chargeable with notice that they
leave the train to obtain food is liable for the death of a section
foreman who, although knowing of the habit but not shown to have
had knowledge of the absence of the conductor and engineer on the
particular occasion, and being without fault, is killed by reason of
the train moving backwards upon the track in sole charge of the

fireman, without any signals being given, and without any signal-man on the rear car to give warning of danger.

MASTER AND SERVANT.—*Notice to Employer.*—An employe is not, as a condition precedent to recovery for an injury, required to notify his employer of a fact which the employer is bound to know.

From the Clark Circuit Court.

*S. Stansifer*, for appellant.

*A. C. Harris, J. H. Stotsenburg* and *E. B. Stotsenburg*, for appellee.

DAILEY, J.—The facts in this case, as shown by the record, are these:

The appellant, as lessee, operates the Jeffersonville, Madison and New Albany Railway. It runs a passenger train from Louisville, via Jeffersonville, to New Albany, called the "dinkey." The crew consists of a conductor, brakeman, engineer and fireman. They go on duty at 5 A. M. each day, and, as appears by the company's card, remain on duty continuously until midnight. On April 28, 1885, the crew, consisting of Bush, conductor; Brooks, brakeman; Parr, engineer; and Eisele, fireman, took the "dinkey" train to run from 5 A. M. until midnight. There were fourteen stops each way. No provision was made for the men to get their meals. The crew lived in New Albany. They could not work nineteen consecutive hours without food. The fireman's little daughter brought his meals in a pail, which he ate on the engine.

It is not shown how Brooks, the brakeman, lived, as the company had him in the service on the road so that he was not present at the trial. On the afternoon of April 28, 1885, appellee's intestate, Richard McCaffrey, the section boss, was at work with four laborers surfacing the track in the city of New Albany. His hand car was standing in an alley immediately north of the track and a few squares east of the State street station, the

western terminus of this line, at which passengers were received and delivered. Bush, the conductor, and Parr, the engineer, lived several squares east of the station. As the train came from Louisville to New Albany, due at 5:40 P. M., the engineer and conductor left the train and ran to their homes to eat their suppers, while the fireman and brakeman were left in charge of the train to take the passengers on to the station. As soon as the train, containing three cars, pulled by McCaffrey and his men, they gathered up their tools to quit work for the day, and began to put their hand car on the track to run eastwardly to the hand car house about one mile distant. McCaffrey resided near by there, on Fifteenth street. The "Air Line" company, at that time, used the J., M. & I. track from New Albany into Louisville, and an east bound train would soon pass. To allow this it became necessary for the "dinkey" train to run into a switch, the east end, or head, of which was 190 feet east of the alley wherein McCaffrey's hand car stood. Brooks, the brakeman, got off and ran along to open the switch, but Eisele, the fireman, ran over the head of the switch before stopping the train. He says: "I lost the air and ran over the switch." There was then no one of the crew on the train but the fireman. Brooks was on the ground to open the switch when he could, and the engineer and conductor were eating hasty suppers at their respective homes. McKenna, the superintendent of the Pennsylvania Company, the officer having the operating of this train in charge, knew that the conductor and engineer, driven by hunger, habitually left the train to get something to eat, as was done this afternoon.

Parr, the engineer, testifies: "That was the only way I had to get something to eat unless it was brought to me in a basket."

A special policeman named Shay, in the employ of the

company, patroling the track in New Albany, was required to get on the train to assist the passengers off, but he had no authority to take command of the train, and did not on this occasion.   The train was thus left, by permission of the company, with no one to operate it except the fireman.   No bell was rung, or other signal given of the backward movement of the train by Eisele. He could not watch or ring the bell, as he was occupied in handling the engine.

It was shown by the appellant that on previous occasions they sometimes let little boys climb on the engine and ring the bell when the engineer was off securing something to eat, but it was not so in this instance.   There was no one to stand on the rear platform, as there should have been, or otherwise to warn the decedent and his men that the train must move backward at once.   Eisele reversed the engine and put on steam and moved back just as McCaffrey and his men were putting the hand car, which weighed 700 pounds, on the track.   They put it on in the usual manner; that is, they carried it on the track and placed it at right angles therewith, and then lifted it quarter round so as to put the wheels on the rails.   As they were so engaged the train backed silently down upon them.   Perry Quirk, one of the section hands, tells the rest of the story in this artless way: "It was just six o'clock, and we were putting on the hand car at the alley.   We had hold of her, and were trying to put her on, and I seen the train coming up and I said, 'boys, we can not make it.'   We were looking toward the train and we could see the cars coming down, and I said 'we can not make it,' and we dropped the car and stepped out.   I hollered; I said 'boys, we can not make it.'   I seen McCaffrey stepping back from the car, and the next I saw him fall.   That is all."

It is shown that the hand car was shoved forward by the collision between it and the train, and the deceased was under the hand car when the train stopped.

William Wren says: "When the train struck the hand car they had got the wheels parallel with the rails with 'two wheels inside the track and two outside.' I saw him fall but did not see him struck. He fell across the rail * * * and the car struck him and drug him down, but did not pass over his body. It drug him ten feet. It rather slipped upon him and shoved him along."

He was mortally hurt, and in intense pain and agony. From the injuries so received he afterwards died. They brought a train down and carried him into the cars to take him home. While aboard the train Shay, the special policeman, sent two or three men into the car to obtain admissions from him. Among these was a constable named Graham, who was a by-stander. Graham said: "I do not think you are badly hurt." The suffering man answered, "he did not think he could live." Graham then, in the presence of conductor Bush, inquired of him as to who was to blame, saying: "Do you blame anybody?" To which he answered: "I don't; it was all my fault; I do not blame any of the boys at all for this." "He said he wanted to save the hand car, to keep it from being mashed up. He was in fear of being discharged for neglecting his own duty." Parr went to see him the next morning. McCaffrey was asleep, and under the influence of morphine. After a while he roused up, and Parr, who seems to have been there to talk to him, says that in the course of a conversation he said to McCaffrey: "I am mighty sorry for it," to which he replied, "I don't blame you at all." The widow, who was present on this occasion, denies that any such statement was made. After Bush, the conductor, had returned from supper and talked with McCaffrey and others on the car,

he sent a dispatch to the superintendent, which, on cross-examination, he admitted was substantially as follows (being an accident report filled up):

"NEW ALBANY STATION, April 28, 1885.
*"To Superintendent:*

"First section 27. Train northward. Engine 822. Engineer, John Parr. Conductor, C. G. Bush. Place and time, 5:40 P. M., main track, alley between Bank and Pearl. What caused it? Putting hand car on track and backed up, and putting hand car out of way, got caught between hand car and track. Name, Richard McCaffrey. Flesh wound on right side. Two ribs on side. Three cars next to engine. Nature accident: Putting car on track when train backed up, tried to get away, fell and train pushed hand car on him.

"(Signed)    C. G. BUSH."

This statement was made just after the accident, when the transaction, as observed, was fresh in the minds of the actors and bystanders, and is the only one in the record showing clearly how McCaffrey happened to receive his injuries.

It is true Bush was not an eye witness to what transpired. It is likewise true that it was made after Bush had seen Brooks, the brakeman, who was standing at the switch when the event happened. As the appellant failed to bring him, as a witness, to the trial, although in its employ, running between Louisville and Indianapolis at the time on a passenger train, it is fair to infer that he saw the accident, and would have testified to the facts contained in the despatch herein set forth. On these facts we can not say that McCaffrey was incautious. A trusty servant, he made an effort to save the hand car then in his care; seeing they could not, the crew abandoned it to save their lives, when, in the language of the despatch, he "tried to get away, fell, and the train

pushed the hand car on him.'' This clearly establishes that he was not guilty of negligently permitting himself to be run over. In a sudden crisis, coming on one by surprise, it is not expected that a person in the midst of such peril will exercise that deliberate judgment which knowledge and proper time for reflection afford. Moved by a high sense of duty to serve his master, the servant may be impelled to an effort to save its property, when a stranger would escape. But the most prudent and active men may accidentally fall, especially when the mind and sight are turned to an unexpected danger, and no opportunity is given for care where or how to step. If one acts naturally in a case of sudden and instant peril put on him by another, and is injured, he is not guilty of negligence, although afterwards, out of the presence of danger, with time to reflect, and in the light of all the known facts, it may appear that another course of conduct might have led to an escape. *Knapp* v. *Sioux City, etc., R. W. Co.*, 32 N. W. Rep. 18; Moak's Underhill on Torts, pp. 283, 284; *Twomley* v. *Central Park, etc., R. R. Co.*, 25 Am. Rep. 162, and note.

In view of the official report made by the conductor on that fatal day, we need not disturb the judgment of the lower court on the ground that McCaffrey recklessly sacrificed his life in order to save the hand car and keep his place.

It is true McCaffrey knew the engineer and conductor were compelled by hunger to leave the train at times and run home to get something to eat. But there is no proof that he knew they had left the train on this afternoon. It was running back and forth continuously, from morning until night.

As we understand the logic of the accomplished counsel for the appellant, it is as follows:

1. McCaffrey was a section boss, and the train crew were fellow-servants.

2. The absence of the conductor and engineer was the proximate cause of McCaffrey's death.

3. That both the appellant and McCaffrey knew, before the fatal day, that the conductor and engineer habitually left the train at times during the nineteen hours of constant duty to get something to eat; that this was in violation of the rules of the company, and in disregard of their duty under the law.

4. That having this knowledge, he was bound to abandon the service or take upon himself the risks incident to operating a train with a deficient crew while part were at their meals.

The four propositions involved in his position, counsel tersely states as follows:

"Moreover the evidence, so far from showing that McCaffrey did not have knowledge of the offending habits of his fellow-servants, discloses that he did, in fact, have knowledge, and no excuse is shown for his thereafter remaining in the service."

We think the doctrine of fellowship between trainmen and trackmen so well settled in this State that a citation of authorities to support it is unnecessary. In this case appellant's counsel frankly admits that his company had, at least, "constructive notice," that the engineer and conductor were "in the habit of leaving their trains to get their meals."

It is a recognized rule of the courts that if the negligence of a master combines with negligence of a fellow-servant, and the two contribute to the injury of another servant, the master is liable. *Franklin, Admr., etc.,* v. *Winona, etc., R. R. Co.,* 34 N. W. Rep. 898; *Elmer* v. *Locke,* 135 Mass. 575; *Grand Trunk R. W. Co.* v. *Cummings,* 106 U. S. 700; *Coppins* v. *New York Central, etc.,*

R. R. Co., 122 N. Y. 557; *Whittaker* v. *President, etc.,
Co.*, 126 N. Y. 544; *Lake Shore, etc., R. W. Co.* v. *Stupak*,
123 Ind. 210 (223.); *Rogers* v. *Leyden*, 127 Ind. 50 (53).

In *Boyce* v. *Fitzpatrick*, 80 Ind. 526, it is said: "While
a servant assumes the risk, more or less hazardous, of
the service in which he engages, he has a right to as-
sume that all reasonable attention will be given by his
employer to his safety, so that he will not be carelessly
and needlessly exposed to risks which might be avoided
by ordinary care and precaution on the part of his em-
ployer, and where, in the absence of such care and pre-
caution, an employe is injured, the employer is liable,
although the negligence of a fellow-servant contributed
to the injury complained of." This principle was ap-
proved in *Louisville, etc., R. W. Co.* v. *Berkey*, 136 Ind.
181.

In our opinion the rule is a just and salutary one, and
we ought not depart from it. Unless it be that a master
has a right to require a servant to stand at his post of
duty without food or rest for nineteen consecutive hours
every day, Sundays included, and that such conduct is
not a breach of duty to the public, as well as its other
servants, it follows that the appellant, in this case, has
not performed its duty towards decedent, without which
it is liable, if this negligence was the proximate cause of
his death. That it was, is clear. The law of nature is
inexorable in its demands. The cravings of hunger
must be appeased. The laws of humanity declare that
every man, fit to be a member of a train crew, must have
three meals, some rest, and eight hours' sleep a day.

The appellee well says: "Deprived of these requisites
of intelligent life, a soldier becomes a coward, a work-
ingman a drone." Any being would lose his strength
if worked a few months by the time schedule provided
for this crew. Every statute and employer's rule is

made in the presence of and subject to the laws of nature. Hunger, thirst, and sleep are imperative; and when a schedule is made of nineteen consecutive hours of service on a train, and no provision is made by the company for their supply of food, it is understood that the employes must, of necessity at times during the service, leave their places to get their meals. So that when the engineer and conductor left the train, after thirteen hours' service on the day of the accident, to get their suppers, it was in obedience to this law of nature—an overruling necessity, and was not, therefore, negligence on their part. They were not deserters, and their conduct can not be characterized as "offending habits." Without notice to the company, it was bound to know that these men must, and therefore did, at intervals during the nineteen hours of each day, leave the train to answer nature's strong and eager desire for food. And so knowing, it will be held to have consented. If appellant desired to escape responsibility, it should have provided an adequate force.

"It is the duty of the railway not to increase the perils of its servants by the inadequacy of the force employed in any particular work; and, in particular, trains must be manned by a sufficient number of train hands." Patterson's Railway Accident Laws, section 297; *Flike, Admr.,* v. *Boston, etc., R. R. Co.,* 53 N. Y. 549; *Booth* v. *Boston, etc., R. R. Co.,* 73 N. Y. 38; Moak's Underhill on Torts, 47.

We think it clear that the appellant was guilty of a breach of duty toward the public, including McCaffrey, by operating the train with only a fireman and a brakeman, because it was its duty to have an adequate number of competent men on the train to handle it and give notice of its approach. And when, by appellant's conduct, it became necessary for its two chief employes to

temporarily absent themselves, it was its duty, at once, to stop the train until their return, or supply their places with other competent men during their enforced and necessary absence. This legal duty is supported by several rules printed on the time card.

Rule 40 provides that the whistle is to be sounded three times when a standing train is to move backward. Rule 40 provides that before starting, the bell must be rung.

Rule 110 reads as follows: "When a train is run backward (except when shifting and making up trains in yards), a signalman must be stationed in a conspicuous position on the rear car, so as to perceive the first sign of danger, and immediately signal to engineman."

The evidence shows that all these rules were violated by the company at the time of the accident.

Impliedly conceding all these facts, the appellant seeks to escape responsibility, by urging that McCaffrey negligently contributed to his own death. If this were true, the general verdict of the jury to the contrary should be set aside. No difference how derelict of duty the company was, if McCaffrey saw or knew the train was backing on him, and going beyond him, he was bound to exercise the caution which the law imposes on every man to take care of himself, even at the risk of losing his position. But as there is evidence in the record strongly tending to establish that he was "stepping back from the car," and "tried to get out of the way," fell, and the "train pushed" the "hand car on him" at the time the calamity befell him, we are not prepared to say that the jury falsified the facts when they found he was not guilty of negligence contributing to the result. Complaint is made that the court refused to give the jury the 16th and 17th instructions asked by defendant. The 16th states the proposition that if McCaffrey knew the engineer and conductor were in the habit of absent-

ing themselves from the train, at times, to get necessary food, then it was McCaffrey's bounden duty to know they were on this train at that time, "and not to place, or attempt to place, the hand car on the track if they were absent, and if he failed in this respect he was negligent." This would have imposed upon him the duty to board the train as it passed, and see if the conductor was on. And as it is negligence to get on a running train, he would have been compelled to have followed the train to the station, in case it did not stop long enough for him to overtake it, and make the inspection. On the same principle he would have been required to see if the fireman was eating his supper on the engine. We are not aware of any rule casting such a burden on the section boss. In the *Baltimore, etc., R. R. Co.* v. *Rowan*, 104 Ind. 88 (94), this court said: "The obligation or duty of the master is not to expose the servants, while conducting his business to perils or hazards which might have been provided against by the exercise of due care and proper diligence on the part of the master." In Patterson's Railway Accident Laws, *supra*, section 283, it is declared that a railway company "is bound to its servants to exercise * * * that degree of care which will tend to secure its servant's safety to as great an extent as is compatible with the conduct of an essentially hazardous business by the use of human instrumentalities." As to the 17th instruction, there was no evidence tending to show that "McCaffrey saw the backing train approaching him in time, and with opportunity, to get out of the way, and failed to do so." The fact is, while trying to get out of the way he fell, and was then struck, dragged and injured. In Rice on Ev., volume 2, p. 796, it is said: "No instructions should be given, which are not relevant to facts which there is evidence tending to prove." By another instruction the appellant asked the court to

charge the jury that if McCaffrey knew that the conductor and engineer were in the habit of leaving the train to get necessary food, "he was bound to report such facts to the company," or he could not recover. This contention is in the face of the fact that the company was bound to know, and did know of this "habit," and it is confessed by the learned counsel for the appellant in his ably written brief. Appellant complains of the rulings of the lower court on the pleadings, and contends that neither paragraph of the complaint states facts to constitute a cause of action. The complaint, it appears, was copied almost literally from the pleading set out in full in the case of the *Ohio, etc., R. W. Co.* v. *Collarn,* 73 Ind. 261, which was held sufficient. Each paragraph of the complaint in this action shows that McCaffrey was killed by the appellant company moving a train back on him without signals or guards, or any one except a fireman in charge of it, and that he was free from fault. This is enough. *Board, etc.,* v. *Legg, Admr.,* 110 Ind. 479; *Wabash R. W. Co.* v. *McDaniels,* 107 U. S. 454; *Atchison, etc., R. R. Co.* v. *Moore,* 15 Am. & Eng. R. R. Cases, 312, section 284, R. S. 1881; *Tennessee, etc., R. R. Co.* v. *Roddy,* 5 S. W. Rep. 286; *Bolinger, Admr.,* v. *St. Paul, etc., R. R. Co.,* 31 N. W. Rep. 856; *Sherlock* v. *Alling, Admr.,* 44 Ind. 184.

The deceased is admitted, and was shown, to have been a man of intelligence, strength, and integrity, of the age of 41 years. He had been promoted, and under the rules was "in the line of promotion dependent upon the faithful discharge of duty, and capacity for assuming increased responsibilities." The damages are not excessive for the loss of such a man. In our opinion the cause was fairly tried.

The judgment is affirmed.

Filed Sept. 20, 1894; petition for a rehearing overruled Dec.18, 1894.