# REPUBLIC IRON & STEEL COMPANY *v.* OHLER.

[No. 20,023. Filed November 17, 1903.]

MASTER AND SERVANT.—*Negligence.—Personal Injuries.—Assumption of Risk.—Knowledge of Danger.*—Plaintiff was in the employ of a manufacturing company as a common laborer, and was classed in and worked with what was known as the "floating gang," doing first one kind of work and then another. He was directed by defendant's foreman to assist in forming a piece of steel into a piston-rod, at which he was required to work for forty-eight hours continuously, without sleep. After the rod was completed, the foreman directed him to assist in holding the rod in an upright position while workmen with heavy sledge hammers riveted or fastened in the follower head, and, while obeying such orders, a sliver from the rod struck him in the eye, destroying the sight thereof. *Held,* that plaintiff was entitled to recover. *pp. 394–401.*

SAME.—*Negligence.—Personal Injuries.*—In determining the liability of the master for an injury to a servant, the inquiry is not whether the accident might have been avoided if the master had anticipated its occurrence, but whether, under the circumstances, the master was guilty of negligence in failing to anticipate it and provide against its occurrence. *pp. 401, 402.*

SAME.—*Negligence.—Care to be Exercised by Master.*—While in order to authorize a recovery by a servant for the negligence of the master the evidence must show that the master neglected to discharge a duty which he owed to the injured servant, and that ordinary or reasonable care is that degree of care which a person of ordinary prudence, under the particular circumstances, is presumed to exercise to avoid injury, such care is required to be in proportion to the danger to be avoided or prevented. *pp. 401, 402.*

SAME.—*Negligence.—Care to be Exercised by Master.*—The duty of the master to provide a safe place for his servants to work and safe appliances with which to perform the labor required of them is not only temporary but a continuing one, and the master must exercise reasonable or ordinary care to keep such places, appliances, tools or machinery, safe. *p. 402.*

SAME.—*Negligence.—Must Warn Inexperienced Servants.*—While the servant assumes all risks naturally and reasonably incident to the services in which he embarks, so far as the hazards of the service are obvious and within the apprehension of a person of his experience and understanding, the law casts upon the master the duty not to expose an inexperienced servant, whom he requires to perform dangerous services, to such danger without giving him warning thereof. *p. 402.*

Republic Iron & Steel Co. *v.* Ohler.

MASTER AND SERVANT.—*Negligence.*—*Assumption of Risk.*—*Servant Ordered to Work Out of Scope of Employment.*—The servant's implied assumption of the risk as a part of the contract of hire is confined to the particular work and class of work for which he is employed; and if the master orders him to work temporarily in another department of the general business where the work is of such a different nature and character that it can not be said to be within the scope of the employment, and where he is associated with a different class of employes, he will not, by obeying such orders, necessarily thereby assume the risks incident to the work. *p. 403.*

SAME.—*Negligence.*—*Anticipation of Injury by Master.*—Plaintiff, a man of mature years, inexperienced as an iron worker in rolling mills, employed and paid as a common laborer, was directed to assist in the construction of a piston-rod in defendant's factory, without being informed of the dangers incident thereto, and, while holding the rod in an upright position while workmen with sledge hammers riveted a piece thereon, a sliver from the rod struck him in the eye. *Held,* that the jury was justified in finding that defendant company was negligent, and that under the facts it ought to have anticipated the accident and provided against its occurrence. *pp. 403, 404.*

SAME.—*Apprehension by Servant of Danger.*—*Overwork of Servant.*—*Evidence.*—In an action against the master for injuries to a servant caused by a sliver of steel flying from a rod he was holding while others were hammering the end thereof, evidence that the servant had been required to work continuously for forty-eight hours, and that at the end of thirty-six hours he informed the foreman that he could no longer endure the strain to which he was being subjected, was proper for the consideration of the jury as bearing on the subject as to whether the servant apprehended and appreciated the danger to which he was subjected. *pp. 404–406.*

From Superior Court of Madison County; *H. C. Ryan,* Judge.

Action by William M. Ohler against the Republic Iron & Steel Company. From a judgment in favor of plaintiff, defendant appeals. Transferred from Appellate Court, under §1337u Burns 1901. *Affirmed.*

*W. H. H. Miller, J. B. Elam, J. W. Fesler, S. D. Miller, J. W. Lovett* and *Harry Rubens,* for appellant.

*W. A. Kittinger* and *W. S. Diven,* for appellee.

JORDAN, J.—Action by appellee to recover damages for personal injuries sustained by him while in the employ

of appellant, which injuries are alleged to be due to the negligence of the latter. The answer was a general denial, and a trial before a jury resulted in a general verdict in favor of appellee, awarding him damages in the sum of $2,500. Answers to a series of interrogatories were also returned by the jury along with their general verdict.

Appellant company unsuccessfully moved for a new trial, and judgment was rendered against it upon the verdict. The points discussed by its counsel and relied upon for a reversal are all based upon the action of the court in denying the motion for a new trial.

The following, among others, are substantially the facts alleged and set out in the complaint: The Republic Iron & Steel Company is a corporation operating a manufacturing plant near the town of Frankton in Madison county, Indiana, and is engaged in making iron bars and rods by means of machinery propelled by steam. The factory is a large plant, and the company hires for services therein a large number of men. On and prior to the 20th day of December, 1899, plaintiff (appellee herein) was in the employ of said company, and was classed in and was at work in what was known as the " 'floating gang,' engaged in doing first one kind of labor and then another." About 4 o'clock on the morning of said 20th day of December, 1899, after he had finished what is denominated as "his night turn," one Kelly who was "foreman of the defendant's said factory, and foreman over its men and employes of the department in which the plaintiff was then at work," ordered him to hold a piston-rod; and, while he was holding said rod, Kelly, as such foreman and agent, ordered two workmen to strike the end of said rod for the purpose of swelling the same in order to fasten a head thereon. Said piston-rod was made of steel, and while the plaintiff was holding it, in obedience to the order and direction of the foreman, the two men and workmen, by order of said foreman, struck the end thereof with large

iron hammers; and while they were so striking the rod a piece of steel flew off from the said head or end and struck the plaintiff in the left eye, thereby destroying the sight thereof, rendering him totally blind in said eye. At the time this sliver of steel struck plaintiff's eye, his head was about two feet from the end of the piston-rod, and was at said distance from the rod by reason of the fact that the foreman had directed him to hold and place himself in that position. The plaintiff was not warned by the defendant or by said foreman of any danger that might result by reason of the end of said piston-rod being hammered and knocked off, or of any danger that might result therefrom. It appears that he had no knowledge of any danger which might attend the holding of said rod when pounded as it was under the circumstances. It is averred that the place where plaintiff was ordered to hold the rod was made dangerous and unsafe for workmen who were wholly unacquainted and inexperienced to work in such a position, and that it was negligence on the part of the defendant to have him hold the rod while said workmen hammered and pounded the same for the purpose of driving or fastening a head thereon. The defendant was aware of and knew of the danger or peril which, under the circumstances, attended the holding of the rod when a head was being hammered thereon; and the defendant also knew that the only proper and safe way to work upon said rod, in order to hammer a head thereon, was to place it in an upright position, without the aid of any person holding it, by fastening it in such a manner as to hold it in position so as to drive thereon the piston-head, and the defendant knew that no one should hold the said rod with his hands when said work was being performed. The plaintiff, it is averred, did not learn these facts until after he was injured. At the time the plaintiff sustained the injury alleged, he had been working continuously, at the instance and request of the defendant in the said factory,

for a period of forty-eight hours, without any sleep, and when he was ordered by said foreman to hold the rod, by reason of his continuous work without sleep, he did not realize nor appreciate the danger to which he was being subjected, and had no knowledge that it was unsafe or dangerous to hold the rod in the manner as ordered by the foreman. It is charged generally that the injury was caused by the negligence and carelessness of the defendant as aforesaid, and by reason of its carelessness and negligence in ordering the plaintiff into said place without warning him of the danger. The expenses incurred by the plaintiff in and about having his eye treated are shown, which medical bill, it is charged, the defendant refused to pay; and it is further alleged that the sight of the left eye is totally destroyed, and that the blindness thereof is permanent.

The sufficiency of the complaint is not discussed by appellant's counsel, but they contend that the evidence given upon the trial is not sufficient to entitle the plaintiff to recover upon his complaint. The infirmity, however, of the argument advanced upon this question, is that counsel seemingly request that we disregard the well-settled rule and assume the task of attempting to weigh the evidence, or, in other words, that we consider only the evidence most favorable to appellant, and thereby reverse the rule of appellate procedure which requires that we, in reviewing the sufficiency of evidence in cases upon appeal, must consider the evidence only which is most favorable to the verdict of the jury or finding of the court as the case may be. There is evidence in the record which may be said fully to sustain appellee's right to recover upon the action set up in his complaint.

The following are some of the material facts which there is evidence in the record to establish: At and prior to the time of the accident in question, which occurred on the morning of December 20, 1899, appellee was in the

employ of appellant company, and had been in its employ for about six months. Appellant is a corporation, and at the time of the accident operated a rolling-mill or manufacturing plant in Madison county, Indiana, and was engaged therein in manufacturing iron bars, rods, etc., by means of machinery operated by steam. Appellee was not a skilled workman, and was employed by appellant as a common laborer, and received wages as such, and was classed in and worked with what was known as the "floating gang" in the rolling-mill, doing first one kind of work, and then another. On December 18, 1899, it seems that the piston-rod of the engine which propelled the machinery of the mill broke, and this caused the work in the mill to be suspended until the rod could be repaired. After the breaking of this rod, one Kelly, appellant's foreman, who was in the control and management of its mill, and in the control and management of its employes in the department where appellee worked, went with appellee to what was known as the "scrap heap." Kelly, it appears, selected a piece of scrap steel from this heap. The metal selected was soft steel, of which fact Kelly had knowledge. He and appellee carried the piece of steel to a turning lathe in the mill, and the foreman then directed him to turn out, by means of the lathe, a new piston-rod for the engine, tō be used in the place and stead of the one which had been broken. Appellee as ordered by the foreman performed the work of turning the rod, but he did it under the directions of the foreman in respect to the manner in which it should be performed. It is disclosed that the foreman was in a hurry to have the new rod completed in order that the work in the mill might not be delayed any longer than possible. At his instance and directions appellee was required to work continuously at the job of turning the rod for forty-eight hours, without any sleep, and did not finish it until 4 o'clock on the morning of December 20, 1899. His regular turn of work consisted

generally of a period of ten hours. The new rod, when turned, was round and about five feet long and three inches in diameter, and, with its head, weighed 250 pounds. What is termed a "follower head," to be used on the rod, was circular, and about twenty inches in diameter. Through the center of this head there was an opening, the diameter of which was, to a small extent, greater than the diameter of the rod, and into this opening the end of the rod was to be inserted. After the rod had been inserted it was necessary to fasten or clinch the head so as to hold it in place by pounding down the end of the rod which projects through the follower head. Appellant's mill had the necessary blacksmith shops, forges, lathes, drill-press, anvils, and the ordinary repairing appliances belonging to such a mill, but it did not have machinery for building or rebuilding engines. After the turning of the piston-rod had been completed at 4 o'clock in the morning, Kelly, the foreman, then proceeded according to his own methods to have the end of the rod riveted or fastened in the follower head; and, to carry out this purpose, he ordered appellee, together with two other men, to place the new rod in an upright position, with one end thereof on the floor, and directed appellee and the other two men to hold it in that position. He then ordered two men who were elevated above the rod by standing on barrels, and who each had a heavy sledge-hammer, to rivet or fasten the end of the rod by means of hammering the end thereof into the cavity in the upper side of the follower head. Appellee, in obedience to the order of the foreman, was engaged in holding the rod, and was in the exercise of due care, when, by force of the hammering, a sliver from the rod flew off and struck him in the left eye, destroying the sight, and rendering said organ totally and permanently blind. The rod in question is shown to have been constructed out of soft steel, but the head was of cast iron. The physician who removed the sliver from the eye testified that it was

as large as a dime. The piston-rod when it was being hammered was warm, but not hot. Appellee had no warning whatever that it was dangerous or unsafe for him to hold the rod as he did at the time when the rod thereof was being hammered in the manner it was, and had no notice or knowledge whatever that a sliver of the rod was likely to fly off and injure him, and he did not apprehend or appreciate the danger or peril of the situation in which he had been placed at work in holding the rod by the orders of the foreman.

There is evidence to establish that the method employed by appellant to rivet or fasten the head of the rod was unsafe or dangerous, and that its foreman, when he ordered appellee to hold the rod, placed him in a position of danger, of which fact he had knowledge, but of which appellee had no knowledge or warning. It is shown that the foreman knew that slivers were liable to fly off of the rod and injure the men who were holding it. There is also evidence going to prove that the safe way to have riveted the head on the rod with sledge-hammers was first to have constructed a rack out of lumber for the purpose of holding the rod when the end was being pounded, and that such appliance could have been constructed within a half day. Appellee, before the accident, had no knowledge that such appliance for holding the rod was the proper and safe one to be employed. He, at the time of the accident, was thirty-three years old, and it appears that before his employment he virtually had no experience in working in iron or rolling-mills. It is disclosed that, after he had worked continuously some thirty-six hours in turning the rod, he informed Kelly, the foreman, that he did not believe he could endure the labor any longer, but the latter informed him that he must continue at the work until the rod was finished, as he desired to have the rolling-mill ready for operation by 6 o'clock the next morning. It is shown that some months previous to the accident

Kelly, the foreman, had discharged appellee from the employ of appellant, for the reason that he refused to work on Sunday, but subsequently he was reëmployed.

Appellant's counsel, in discussing the evidence, contend, (1) that the facts do not show actionable negligence, for the reason that it does not appear that the accident by which appellee was injured was one which ordinary foresight and prudence could have anticipated and prevented; (2) that there are no facts proved tending to show that appellant, the master, and appellee, the servant, were not on an equal footing with each other in regard to notice or knowledge of the danger to which the latter was subjected or exposed; (3) that he, under the circumstances, must be held to have assumed the risk. That each of these contentions are inconsistent and wholly at variance with the facts in this case is certainly apparent. We are not unmindful of the rule that the master is not an insurer of the safety of his servants, and that reasonable or ordinary care, and not the highest efficiency which skill and foresight can produce, is the legal standard by which the liability of the master is tested.

The inquiry in this case is not whether the accident might have been avoided if appellant had anticipated its occurrence, but whether, under the circumstances, it was guilty of negligence in failing to anticipate it and provide against its occurrence. It is true that, in cases like the one at bar, in order to authorize a recovery, the evidence must show that the master neglected to discharge a duty which he owed to the injured servant. This court has repeatedly asserted that the law interprets ordinary or reasonable care to be of that degree which a person of ordinary prudence, under the particular circumstances, is presumed to exercise to avoid injury. Such care, however, is required to be in proportion to the danger to be avoided or prevented, and the consequences which may result from

the neglect. *Louisville, etc., R. Co.* v. *Schmidt,* 147 Ind. 638, and cases cited. That the master, under the law, owes the duty to his servants of providing a safe place for them to work, and safe appliances with which to perform the labor required, is elementary. This duty is not only temporary, but it is a continuing one, and the master must exercise reasonable or ordinary care to keep such places and such appliances, tools, or machinery, safe.

In *Jenney Electric, etc., Co.* v. *Murphy,* 115 Ind. 566, it is affirmed that the master especially engages, "that he will not expose the employe to danger which is not obvious, or of which the latter has no knowledge or adequate comprehension, and which is not reasonably and fairly incident to and within the ordinary risks of the service which he has undertaken. There is another equally well settled principle correlative to the rules which define the duties of the employer, which holds the employe to the assumption of all risks naturally and reasonably incident to the service in which he embarks, so far as the hazards of the service are obvious and within the apprehension of a person of his experience and understanding."

One of the duties which the law casts upon the master is not to expose an inexperienced servant, whom he requires to perform dangerous services, to such danger without giving him warning thereof. He is required to give such servant such instructions as will enable him to avoid the injury, unless while performing the required service both the peril and the means of avoiding it are apparent. Of course, the duty to warn and instruct in such cases naturally arises out of the ignorance or inexperience of the employe, and does not extend to employes who are of mature age, and familiar with the employment in which they engage and the risks incident thereto. *Atlas Engine Works* v. *Randall,* 100 Ind. 293, 50 Am. Rep. 798; *Pittsburgh, etc., R. Co.* v. *Adams,* 105 Ind. 151; Bailey, Per. Inj., §§2664, 2667.

There is another well-recognized principle of the law governing the relation of master and servant which affirms that "The servant's implied assumption of risks, which accompanies and is a part of the contract of hiring, is confined to the particular work and class of work for which he is employed, and if the master orders him to work temporarily in another department of the general business, where the work is of such a different nature and character that it can not be said to be within the scope of the employment, and where he is associated with a different class of employes, he will not, by obeying such orders, necessarily thereby assume the risks incident to the work." *Pittsburgh, etc., R. Co.* v. *Adams, supra.*

In the case at bar it appears that appellee was employed and paid as a common laborer. It does not appear that his services as such extended to the construction of a piston-rod for the engine in appellant's mill. While it is true he was a man of mature years, still, as the evidence tends to prove, he was inexperienced as an iron worker in rolling-mills prior to his employment. He received no warning whatever, and had no knowledge of the danger to which, under the circumstances, he was exposed. While, upon the other hand, appellant is shown to have had notice thereof, and knew that the place or position in which it ordered appellee to work on the occasion in question was unsafe. It knew that under the method or means employed to rivet or fasten the head upon the piston-rod, slivers from the metal were liable to fly from the force of the hammering, and injure those engaged at the time in holding the rod with their hands. Considering all of the circumstances as they existed, the jury was justified in finding that appellant company was negligent, and that, under the facts, it ought to have anticipated the accident and provided against its occurrence. In fact, it may be said that there is sufficient evidence to authorize the jury

to find in favor of appellee upon every material issuable fact in the case.

Appellant next complains of certain instructions given and refused by the court. We have carefully examined and considered the charge given by the learned judge presiding at the trial, and are of the opinion that, when it is considered as a whole, as it must be, it is in entire harmony with the law, and covers every material phase of the case. In truth it may be said that the charge is as favorable to appellant as, under the circumstances, it could demand.

It appears that the ruling of the court in refusing instructions requested by appellant was due to the fact that they either did not correctly state the law applicable to the case, or were substantially covered by others given by the court. It is not necessary in this case that we should specifically refer to or set out all of the instructions upon which counsel for appellant predicate error.

It is urged that instruction number two given by the court is faulty for the alleged reasons (1) that it assumes that the acts of appellant were negligent; and (2) because it omits the question of the assumption of risk by appellee. There certainly is no substantial grounds for asserting that the instruction in question is open to the first objection; while in regard to the second the court by other instructions fully advised the jury relative to the law governing the assumption of risk on the part of appellee. Certainly the court was not required to advise or inform the jury in any one instruction upon all of the principles of law applicable to the case. In fact, upon the question of the assumption of risk, the court, upon its own motion, and at the request of appellant, fully advised the jury in regard to that feature.

The court, at appellant's request, refused broadly to charge that the fact that the plaintiff was working beyond the usual time could have no bearing upon the case in

any way whatever. As hereinbefore stated, there was evidence introduced in behalf of appellee going to show that before the accident occurred he had been required to work continuously in turning the rod for forty-eight hours without any sleep; that at the end of thirty-six hours he informed the foreman to the effect that he could no longer endure the strain to which he was being subjected. The foreman, however, refused to relieve him, but required him to continue at the work until the rod was completed. This evidence, so far as we have observed, was introduced without any objections on the part of appellant. If it was properly admitted, it was before the jury for all legitimate purposes. If, as counsel for appellant contend, opposing counsel may, in their argument, have pictured their client as a "ruthless corporate taskmaster" and a "merciless and greedy corporation," they should have requested the trial court to have limited the jury to a proper consideration of the evidence in question. The object of the instruction, as requested, was entirely to withdraw this particular feature of the case from the consideration of the jury for any purpose whatever, and, in the form presented, it was properly denied. Appellant, in view of the contention of its counsel that the danger to which appellee was exposed was, under the circumstances, just as open and apparent to appellee as it was to the former, and that he should have known and appreciated the danger, is not in a position to complain of the refusal of the charge as requested.

Appellee ought to have known, it is insisted, that slivers were liable to fly from the rod when it was being hammered. It is not reasonable to assert that a man who has labored continuously for a period of forty-eight hours without sleep, or for even a much shorter time, is in his normal condition, or that he, under the circumstances, can properly exercise all of the faculties or senses with which he is endowed. The law of nature is inexorable in its

demands. The cravings of hunger and nature's demand for sleep or rest must have consideration. A human being deprived of sleep for the period which appellee was becomes dull in intellect and apprehension, and necessarily must be more or less unmindful of his surroundings. This court in *Pennsylvania Co.* v. *McCaffrey,* 139 Ind. 430, 438, 29 L. R. A. 104, said: "The laws of humanity declare that every man, fit to be a member of a train crew, must have three meals, some rest, and eight hours' sleep a day." The jury had the right, at least, to consider this feature of the case, as bearing upon the question whether under all of the circumstances appellee apprehended and appreciated the danger to which he was subjected. This was a question presented, and one to be determined by the jury under all of the facts bearing thereon.

After giving a careful consideration to all of the propositions urged by counsel for a reversal, we are constrained to conclude that there is no error in the record. Judgment affirmed.