## MELTON v. TEXAS & N. O. R. CO.*
### (No. 2706.)

(Court of Civil Appeals of Texas. Texarkana. July 2, 1923. Rehearing Denied Oct. 4, 1923.)

1. **Master and servant ⟐163(1)—Railroad held to have provided sufficient number of employees.**

Where a foreman directed a section crew to unload a carload of ties, and no specific directions were given as to any particular manner of unloading, and plaintiff was injured while voluntarily handling a tie alone without the assistance of his coworker, employer *held* not to have failed in its duty to provide a sufficient number of employees to insure the safety of the workers.

2. **Master and servant ⟐130—Injury in course of usual work without specific direction not actionable.**

Where the section foreman ordered his crew to unload a car of ties, and unloading ties was part of their usual work, and no specific directions were given as to any particular manner of unloading, an injury sustained in the course of such unloading without more does not render employer liable.

3. **Master and servant ⟐107(2)—Employer's duty to make safe place does not extend to conditions involving risk ordinarily incident to work.**

Where plaintiff was injured while unloading a car of wet creosoted cross-ties from a flat car, and knew that they were slippery to walk upon, the duty of his employer to make safe the place to work does not extend to the place where the conditions necessarily involve certain risk ordinarily incident to the work.

Appeal from District Court, Kaufman County; Joel R. Bond, Judge.

Action by W. S. Melton against the Texas & New Orleans Railroad Company. From a judgment for defendant, plaintiff appeals. Affirmed.

The appellant sued for damages for alleged personal injuries sustained while he, employed as a section hand, was unloading cross-ties from a car. After hearing the evidence the court peremptorily instructed a verdict in favor of the railroad company. The appeal is to revise the ruling of the court.

The appellant was the only witness testifying as to how his alleged injury happened, and the cause of it. It appears that a flat car loaded with 438 cross-ties arranged lengthwise in four tiers was left on the side track at Lagow switch in order to have the section crew unload 125 of them for use in the track on that section. Some of the ties were hewn, and some sawed, and all of them had been creosoted. The section foreman, appellant, and four other members of the regular section crew went in a hand car to the switch, and then set the hand car off the track. Appellant first climbed on the car loaded with the cross-ties, followed by the foreman and the four other members of the crew. Appellant went to the southwest corner of the car to cut a wire, and then he and Fuquo went over to the north end of the car, and the foreman and the three other members of the crew remained at the south end of the car to unload the ties. Appellant and Fuquo, standing on top of the ties, threw off five or six cross-ties that were loose, and the appellant, without Fuquo's assistance, shoved off two ties at the second tier. Appellant undertook to shove off a third cross-tie, and, as he bent forward and downward to take hold of the end of it, his foot slipped on the cross-tie that he was standing on, and he fell to the ground, causing him, as he claims, to sustain bodily injuries. Quoting from appellant's testimony:

"I was the first man on the top of the car, and Mr. Wade was next, and the others followed. I did not pay much attention to the appearance of the ties until I went and cut a wire on the southwest corner of the car, when I noticed that the ties were wet and slippery with some kind of oil like creosote. I never heard anybody say it was creosote, but it was black-looking stuff, that smelled like creosote. I never had experience in unloading wet creosoted ties, but I had unloaded dry creosoted ties. Fuquo and I went to the north end of the car to unload. We threw off five or six ties that were loose. At the second tier of ties I took off two ties next to the main line. The first one I picked up and shoved it out, and the next one I threw it over the side. Then I picked up another one, and when I got hold of it a tie in the middle of the tier slipped over the lower end of it three or four inches, and I pulled on it, and when I pulled on it my feet flew out from under me. That is all I know about it. * * * The reason I fell off was that the ties were so slick with creosote dip that I could not stand up. I don't know exactly the weight of a creosoted tie, but about

200 pounds. I was accustomed to handling weighty things. I handled them ties, and have handled dry creosoted ties by myself."

He further testified:

"I had been called upon by the foreman to do all kinds of work. We had unloaded six carloads of ties, and the car I fell from was the seventh. We never did have more than two men engaged in handling one tie. We never had handled any as slick and heavy as those. I threw off two cross-ties, and they were wet and slippery, and they slid off good. When I started to pull the third one out it was tighter than I thought, and I pulled harder, and then my foot slipped and off the car I went. To tell you the truth, I don't think I noticed that the ties were wet and slippery until I climbed up on them. I noticed it after I went up on the load of cross-ties. There wasn't any other way to unload that 125 cross-ties, and we had to go on top of them. I did not object to going on top of the car. * * * Mr. Wade ordered us on top of the car to unload the ties. We all went right up on the carload of ties."

No specific directions were given by the foreman to his crew as to the particular manner in which the ties were to be unloaded. Appellant was a man of mature years and of good intelligence, and was familiar with his duties.

The petition alleged as negligence that—

"Defendant negligently failed (1) to furnish him a reasonably safe place in which to work, and (2) negligently ordered, directed, and commanded plaintiff to unload and to assist in unloading said cross-ties and to stand upon the top of such car of cross-ties while doing such work, the same then and there being wet, slick and slippery with creosote and not being a reasonably safe place to work, and (3) negligently directed and commanded plaintiff to unload said cross-ties and to undertake to unload such with the help of but one hand, which was then and there an insufficient amount of help to do said work of unloading with reasonable safety to himself."

The defendant answered with general denial, and specially pleaded want of any negligence on its part.

Clyde F. Winn, of Waxahachie, and Cooley & Crisp, of Kaufman, for appellant.

Terry & Brown, of Kaufman, for appellee.

LEVY, J. (after stating the facts as above). [1] Appellant's propositions affirm that the court erred in giving a peremptory instruction against him, because the evidence shows that the railroad company (1) failed in its duty to furnish him a reasonably safe place in which to work, and (2) failed in its duty to provide a sufficient number of employees to do the particular piece of work of unloading the ties to insure the safety of all engaged therein, and (3) through the foreman, as a vice principal, was guilty of negligence in specially ordering appellant to unload the ties from the car, and to work with the help of but one hand. Looking to the evidence of appellant, it is quite clear that his alleged injuries were not proximately caused by his coworkers or by the failure to provide sufficient hands to do the unloading of the ties. Appellant testified:

"We never did have more than two men engaged in handling one tie. * * * I don't know exactly the weight of a creosoted tie, but about 200 pounds. I was accustomed to handling weighty things. I handled them ties, and have handled dry creosoted ties by myself. * * * I threw off two ties, and they were wet and slippery, and they slid off good. When I started to pull the third one out it was tighter than I thought, and I pulled harder, and then my foot slipped and off the car I went."

At the time of the fall he was sliding the ties off the top of the car to the ground, voluntarily doing the work alone and without the assistance of Fuquo, his coworker, assigned along with him to do the work. The "two men" always theretofore furnished "in handling one tie" at a time were there in appellant and Fuquo, his coworker.

[2] The foreman of the section crew did, it appears, direct the entire crew, which included appellant, to unload 125 cross-ties from the flat car standing on the side track. As appellant says:

"Mr. Wade ordered us on top of the car to unload the ties. We all went right up on the carload of ties."

The order given by the foreman was the usual general order in the discharge of usual duties, and no specific directions were given as to the particular manner or method in which the ties were to be unloaded, except that Fuquo and appellant together would unload from off the tier of ties located on the north end of the flat car. The work of unloading ties from cars was a part of appellant's usual work in his line of duty, and he was not put to work outside the scope of his employment. As appellant testified:

"I had been called upon by the foreman to do all kinds of work. We had unloaded six carloads of ties, and the car I fell from was the seventh."

It is not doubted that it is a rule of law that an employee has a right of action who is injured by reason of the negligence of any person to whose orders he is bound to conform, and does conform, if his injury results from so conforming. But in this case the appellant was not injured in performing, or as a result of conforming to, a specific order, direction, or instruction of the foreman. He was acting under a general order or direction given with regard only to the general discharge of his duties. It was the usual and not the peculiar occurrence or work for appellant to unload cross-ties from a flat car.

[3] There is no uncertainty in the evidence

about the fact that appellant fell to the ground because his foot slipped due to the fact that the cross-tie on which he was standing was slick as a result of being creosoted. Appellant says:

"The reason I fell off was that the ties were so slick with creosote dip that I could not stand up."

The condition of the ties was a usual and normal one, and not an unusual or unexpected condition, flowing from the process of creosoting. The appellant was not unapprised of such condition, for, as he says, he "noticed that the ties were wet and slippery" before the fall, when he went to "cut a wire on the southwest corner of the car." Further, he knew that the ties were creosoted, for they "smelled like creosote." Was the railroad company guilty of negligence in having the appellant unload creosoted ties from a flat car? It is the general rule that an employer owes to his employee a duty to make safe the place where he is required to perform his services, failing in which he renders himself liable to an employee who may sustain injuries as the proximate result of his neglect. But the rule does not extend ordinarily to the place where the conditions there necessarily involve certain risk ordinarily incident to the work. The instant case is within that exception. Here there was a usual risk ordinarily incident to unloading creosoted ties when standing on them. Appellant's fall to the ground was entirely the result of the risks that are ordinarily incident to the risk of unloading creosoted ties, viz. he slipped on a wet and slippery tie of the kind he was unloading. There is no foundation in the evidence for a finding of negligence. Houston & T. C. R. Co. v. Alexander, 103 Tex. 594, 132 S. W. 119; Ebersole v. Sapp (Tex.) 208 S. W. 156.

There being no negligence shown on the part of the railroad company, the court did not err in giving the peremptory instruction. The judgment is affirmed.