Grisham Bros., of Eastland, for appellant.

Conner & Conner, of Eastland, for appellees.

## CATE v. ORFIC GASOLINE PRODUCTION CO. et al.

### No. 1358.

Court of Civil Appeals of Texas. Eastland.

Jan. 4, 1935.

Rehearing Denied Jan. 25, 1935.

LESLIE, Justice.

J. M. Cate, formerly an employee of the Ockland and the Orfic Gasoline Production Companies, corporations, filed this suit against those companies to recover damages alleged to have accrued to him by reason of the failure of the defendants "to employ a sufficient number of men at all times, and in each emergency, to enable the work to be performed with reasonable safety to the plaintiff, and to employ one or more men to substitute for the plaintiff at reasonable intervals of eight or ten hours." That "notwithstanding said duty," and although the principal cold spell of the season—zero weather—occurred on or about February 7, 1933, causing "breaking and disorders in pipe lines

and connections in and out of both plants," thereby necessitating plaintiff's "remaining constantly on the job for about sixty hours," "the defendants failed to employ a sufficient number of men on said work for the reasonable safety to plaintiff." The fifth paragraph of plaintiff's petition reads: "In this connection plaintiff further says that the failure of the defendants to furnish a sufficient number of men to perform the work assigned to the plaintiff, as aforesaid, was negligence upon the part of the said defendants, and each of them, and that such negligence was the proximate cause of the plaintiff's said injuries and his resulting damages."

The injuries alleged were that by reason of the plaintiff's overexertion for such a great period of time during severe weather, he contracted or developed tuberculosis which produced in him physical pain and mental anxiety, as well as destroying his capacity to labor. In another portion of his pleadings, the case is stated thus: "Plaintiff says that his condition is one of total and permanent disability, resulting proximately from the negligence of the defendants in not supplying sufficient men during said emergency to relieve the plaintiff at eight or ten hour intervals instead of subjecting him to the intolerable task of working sixty hours with only three hours off for rest and sleep."

The plaintiff also alleged facts showing that the defendants were each engaged in operating separate gasoline plants, and that they were each eligible to become subscribers under the terms of the Workmen's Compensation Law of Texas (Vernon's Ann. Civ. St. art. 8306 et seq.).

The defendants entered a general denial to the plaintiff's allegations, and specially answered that each of the defendants had employed the plaintiff as a "trouble shooter," and that under his contract of employment it was part of his duty to look after and care for any defects in the equipment that might arise during the operation of the business of each of the defendants, and to perform such duties to the end that the plant operate regularly and properly, and that without regard to the cause for breaks and defects in the machinery, pipes, etc., and wherever and whenever the same might need attention. The defendants further specially alleged that during the cold spell aforesaid, the plaintiff, without any request or suggestion from them, or their foreman, voluntarily entered upon the discharge of his duties in looking after and working with the machinery and appliances necessary to the operation of the business. Further, that the plaintiff at no time suggested, or requested, the defendants to relieve him of any of the duties of his employment.

The trial was before the court and jury, and, at the conclusion of all the testimony, the trial court withdrew the case from the jury and instructed a verdict in favor of the defendants, and the plaintiff appeals, assigning as error said action of the court.

The facts disclosed that the defendants were eligible to be subscribers under the Workmen's Compensation Law of Texas. The suit is, therefore, a common-law negligence case against eligible nonsubscribers under the Workmen's Compensation Law. It follows that no defenses are available to the defendants upon the theory of the plaintiff's contributory negligence, injury caused by negligence of fellow employee, or assumed risk. Article 8306, § 1, R. S. 1925 (Vernon's Ann. Civ. St. art. 8306, § 1). Nevertheless, to authorize a recovery by the plaintiff against the defendants in a suit of this character, it is necessary for the plaintiff to allege and prove negligence upon the part of the defendant, his agent, or servant, and that such negligence proximately caused the injuries complained of. West Lumber Co. v. Smith (Tex. Com. App.) 292 S. W. 1103; Hunt v. Robinson (Tex. Civ. App.) 55 S.W. (2d) 166.

We, therefore, examine the record to determine whether or not there is any evidence to establish the plaintiff's cause of action. If the plaintiff has a cause of action against the defendants, the facts must be alleged and proved which put the defendants in default. The defendants must have violated some legal duty owing to the plaintiff. Crump v. Hellams (Tex. Civ. App.) 41 S.W. (2d) 288.

In the instant case, the plaintiff and the defendants found it to their mutual advantage to enter into a contract of employment. By the terms of that contract, the plaintiff became what is known as a trouble shooter for each of the companies at their respective plants. The parties had a legal right to make the contract, for it was not forbidden by the laws of the state or the federal government. It in no way contravened public policy. Neither of the companies needing a full time trouble shooter, each of them engaged his services and agreed to pay one-half of his monthly salary. His time

was given to each of them according to their respective needs.

The plaintiff had long been in the services of these companies. He commenced working for the Ockland in 1923. Soon thereafter, he began work for the Orfic Production Company, and worked for it constantly until 1929 or 1930 when he commenced working for the companies jointly. C. C. Cutting was superintendent of each of the companies and in behalf of them employed the plaintiff to work for them.

■ Concerning the nature of his services, the plaintiff testified that he was to be the trouble shooter for each company; that he was to pump four wells each day, change field meter charts, blow drips, or vacuum lines, and if any trouble came up about either of the plants, it was his business to be called out and get things to going right; that he had no regular hours for either company; that he worked back and forth between the plants whenever and wherever he was needed; that his regular hours, in the absence of any trouble, were supposed to be 7 a. m. to 5 p. m.; that when he commenced work for the two companies the superintendent, Cutting, told him that he would be subject to call for work at either of the plants as and when needed; that he could not give the exact language used by Mr. Cutting, or the exact language stated by himself, but that he had stated the substance of the agreement; that more of his work was done at the Ockland plant than at the Orfic for the reason that company had three wells; that he was, however, subject to call at either plant as the superintendent might direct; that all of this was in keeping with the terms of his original employment; that during cold spells it was his duty to see about broken pipes in and about the plants; that it was necessary during the cold spell testified about for the plaintiff, or some one, to remain on the job to keep the plant going properly.

Concerning the work during the cold spell referred to in the petition, the plaintiff testified that for twenty-four or thirty hours his work was on the outside of the plant, and the remainder on the inside; that the work was hard manual labor; that at the end of the sixty-hour period he was thoroughly exhausted; that thirty or forty days after this sixty-hour period he began to have pleurisy pains; that he had slight pleurisy pains and had but two serious spells that required medical attention; that the first spell was some time in March (1933) and the other some time the first of April; and that on May 9th he went to bed with what the doctors called flu and had been confined ever since that time with tuberculosis.

From the record as a whole, we conclude there was nothing inherently dangerous in the work as such which the plaintiff was employed to do, and there is no claim of accidental injury attributable, in whole or in part, to overexertion or exhaustion. No such claim is made. Neither is there any testimony that the defendants set any time limit within which the work had to be done, and it is not disputed that other employees, two at least, were engaged as extra help at the same task as the plaintiff at the time he labored the unusual number of hours. One of them worked continuously about thirty hours, but evidently experienced no bad effects therefrom.

The character of work done by plaintiff was exactly that contemplated by the parties, and although the superintendent was present for a while once or twice a day— usually at night and morning—during the breakdown in the operation of the plant, yet there is no evidence that he, or any other authorized employee of the defendants, ordered or directed the plaintiff to labor the unusual length of time.

There is nothing in the testimony to indicate that the work was of an emergency nature, other than the operation of a rather small gasoline plant was temporarily interrupted by the freezing and bursting of pipes —all of which was in the contemplation of the parties at the time the contract of employment was made. It was equally within the contemplation of the parties at said time that the necessity, or demand, for plaintiff's services might come at any time, day or night, and regardless of the extremes of weather conditions. When the testimony is considered as a whole, there is no evidence that the defendants demanded, or expected, the performance of labor to a degree that taxed physical endurance, nor does the plaintiff testify that he reported the state of his exhaustion to his employers, or that he called upon them for additional laborers or assistance. There is no evidence that the plaintiff was required by the defendants to labor unceasingly at this work without opportunity for taking rest and food, or that his injuries were the result of conforming to a specific order, direction, or instruction of the superintendent. Melton v. Texas & N. O. R. Co. (Tex. Civ. App.) 254 S. W. 510. Had the defendants thus demanded or required

such labors on his part, a different case would be presented.

While the labor was in progress, other workmen remarked on plaintiff's continuous efforts to repair the plant, but no one testified that such conversations were with, or in the presence of the superintendent, Cutting, and it cannot be said from the testimony that he was, in fact, aware of the continuous labor of the plaintiff over so long a period of time. Evidently the work was not done under the employers' compulsion, and if the manner of doing the same was not wholly within the control of the appellant, the record fails to show it. Although the plaintiff's efforts and labors under the circumstances disclose loyalty to, and interest in the affairs of his employer, there is nothing to indicate a necessity, or demand, that should have caused him to labor beyond his strength. The defendants are not shown by the testimony to have been aware of the fact that he had reached the limit of his strength any more than the plaintiff appears to have been conscious of it, either at the completion of the work or prior thereto. The injuries alleged did not arise by reason of the fact that the plaintiff, in his exhaustion, fell, slipped, or met with any other untoward happening.

The rule that it is the duty of the master to employ a sufficient number of servants to do the work they are requested to do with reasonable safety to themselves has no application in this case. The injuries did not result because the force was inadequate in the meaning or application of that rule. As elsewhere remarked, there was no accidental injury sustained, and the injury complained of is rather to be attributed to voluntary exposure incident to, and inherent in, the work in which the plaintiff was engaged. West Lumber Co. v. Smith (Tex. Com. App.) 292 S. W. 1103; Jirmasek v. Payne, 151 Minn. 421, 186 N. W. 814.

From the foregoing findings and conclusions, it follows that the record as presented does not convict the defendants of the negligence.

Both appellant and appellees have cited many authorities dealing with cases arising under the Workmen's Compensation Law of Texas. These cases deal with industrial accidents compensable under the statute, and such claims are not dependent on negligence.

Buchanan v. Maryland Casualty Co., 116 Tex. 201, 288 S. W. 116. This being a common-law negligence case, the decisions based upon said statute have no bearing upon the issues of this case.

The appellant relies upon the following, and other cases of like import: Great Northern Ry. Co. v. Courture, 14 Quebec K. B. 316, 7 Ann. Cas. 190; Pennsylvania Co. v. McCaffrey, 139 Ind. 430, 38 N. E. 67, 29 L. R. A. 104; Republic Iron & Steel Co. v. Ohler, 161 Ind. 405, 68 N. E. 901, quoted in 7 Ann. Cas. 191, 192; Pelin v. New York Cent. & H. R. Co., 102 App. Div. 71, 92 N. Y. S. 468; McCrary v. Southern Ry. et al., 83 S. C. 103, 65 S. E. 3, 18 Ann. Cas. 840; St. Louis S. W. R. Co. v. Kelton, 28 Tex. Civ. App. 137, 66 S. W. 887. These authorities are not believed to be controlling in the instant case. They deal with cases in which overexertion, due to excessive hours of employment exacted by the employer, caused, or contributed to cause, accidental injuries. The Courture Case above is typical of the others. There the railway employee's exposure to accident from defective couplers was aggravated by exhaustion due to exacted excessive hours of labor, and the syllabus in the report of that opinion interprets the court's holding as follows: "A master who keeps his servant continuously at work for an undue number of hours is liable in damages for an injury which the servant sustains, in the ordinary discharge of his duty, in consequence of his inability, from fatigue and exhaustion, to use the requisite skill and care."

Such requirements by the master were found to be negligence proximately causing, or contributing to cause, the accident and resulting injuries for which suit was prosecuted. As above noted, no accidental injury is here involved and there is an absence of testimony that the employers, or either of them, specifically required the employee to work continuously for an excessive number of hours.

From the foregoing, we conclude that the plaintiff failed to make out a case of negligence against the defendants, or either of them. Such being the case, the trial court did not err in instructing the verdict for the defendants.

For the reasons assigned, the judgment of the trial court will therefore be affirmed.