MARYANNA HUDA, as Administratrix of VALENTINE HUDA, Deceased, Appellant, *v.* THE AMERICAN GLUCOSE COMPANY, Respondent.

1. MASTER AND SERVANT — MANUFACTURING ESTABLISHMENTS — FIRE ESCAPES. Screwing down the sashes in the windows adjoining the fire escapes on a manufacturing establishment, and requiring the employés to keep them closed, in order to maintain a high temperature necessary to the work carried on, do not constitute a violation of the statute prescribing the maintenance of fire escapes embracing "windows at each story and connecting with the interior by easily accessible and unobstructed openings" (L. 1892, ch. 673, § 6), provided the sashes are so light as to be easily broken through.

2. NEGLIGENCE. Screwing down light and easily broken sashes, in windows adjoining the fire escapes on a manufacturing establishment, and requiring the employés to keep them closed, in order to maintain a high temperature necessary to the work carried on, in a building properly constructed for the purposes of its intended use, do not constitute negligence or breach of duty on the part of the employer towards those employed in the building.

3. ASSUMPTION OF RISKS. If an employé in a manufacturing establishment subject to the statutory requirements as to fire escapes, is familiar with his employer's method in respect to escape in case of fire, and has for a long period worked under and acquiesced in the conditions under which his work is necessarily done, he must be deemed to have assumed the risks of the situation, where such method and conditions violate no statutory requirement.

*Huda* v. *American Glucose Co.*, 12 App. Div. 624, affirmed.

(Argued December 2, 1897; decided December 14, 1897.)

APPEAL, by certification, from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered December 21, 1896, upon an order which overruled plaintiff's exceptions to the direction of a verdict by the trial judge in favor of defendant, ordered to be heard in the first instance by the Appellate Division, denied a motion for a new trial and directed judgment for the defendant.

The nature of the action, the questions certified and the material facts are stated in the opinion.

*Le Roy Parker* for appellant. The origin of the fire was due to the negligence and want of care of defendant in not providing and maintaining safe electrical appliances in the dynamo room. (*McAdam* v. *R. R. Co.*, 67 Conn. 340; *Harroun* v. *B. E. L. Co.*, 12 App. Div. 126; *Coddington* v. *B. C. R. R. Co.*, 102 N. Y. 67; *Mayer* v. *Liebmann*, 16 App. Div. 54; L. 1891, ch. 105; *Woolsey* v. *Trustees of Ellenville*, 84 Hun, 236; *Poulsen* v. *N. E. R. R. Co.*, 18 App. Div. 221; *Jones* v. *U. R. Co.*, 18 App. Div. 267; *Stillman* v. *N. Y. S. Co.*, 17 App. Div. 397; *Clarke* v. *N. E. R. R. Co.*, 9 App. Div. 52; *Seybolt* v. *N. Y., L. E. & W. R. R. Co.*, 95 N. Y. 562.) The defendant's method of screwing down the windows of the building in which the deceased was employed, so that there was no access to the fire escape except by breaking the windows, and forbidding the employees of the defendant engaged in that building from opening the windows, and requiring them to keep a high temperature in the work rooms, such as was necessary to accomplish the business carried on in these rooms, was a violation of the statute requiring a construction and maintenance of fire escapes in such building. (L. 1890, ch. 398; L. 1892, ch. 673, § 6; *Gorman* v. *McArdle*, 67 Hun, 487; *Pauley* v. *S. G. & L. Co.*, 131 N. Y. 92; *Pantzar* v. *T. F. I. M. Co.*, 99 N. Y. 376; *Willy* v. *Mulledy*, 78 N. Y. 310; *Schwandner* v. *Birge*, 33 Hun, 186; *Corcoran* v. *Holbrook*, 59 N. Y. 517; *Stringham* v. *Stewart*, 100 N. Y. 516; *Stringham* v. *Hilton*, 111 N. Y. 188; *Eastwood* v. *R. M. Co.*, 86 Hun, 99; 152 N. Y. 651; *Morrison* v. *N. Y. C. & H. R. R. R. Co.*, 63 N. Y. 643.) The act of screwing down the windows was a violation of a statutory duty. It was also negligence irrespective of the statute. (*Pauley* v. *S. G. & L. Co.*, 131 N. Y. 90; *Willy* v. *Mulledy*, 78 N. Y. 314; *McRickard* v. *Flint*, 114 N. Y. 222; *Benton* v. *McMillan*, 2 Scam. 436; *Summerville* v. *Marks*, 58 Ill. 371; *S. D. Co.* v. *Young*, 77 Ill. 197; *Eastwood* v. *R. M. Co.*, 86 Hun, 96; 152 N. Y. 651; *Johnson* v. *S. G. & L. Co.*, 146 N. Y. 160; *Weeks* v. *Cornwell*, 104 N. Y. 336; *O., etc., R. R. Co.* v. *Collarn*, 73

Ind. 264.) The deceased did not assume the risk of death by fire. (*Willy* v. *Mulledy*, 78 N. Y. 310; *Knisley* v. *Pratt*, 148 N. Y. 378; *Pauley* v. *S. G. & L. Co.*, 131 N. Y. 95; *Benzing* v. *Steinway & Sons*, 101 N. Y. 552; *McGovern* v. *C. V. R. R. Co.*, 123 N. Y. 280; *Booth* v. *B. & A. R. R. Co.*, 73 N. Y. 40; *Pantzar* v. *T. F. I. M. Co.*, 99 N. Y. 376; *Felice* v. *N. Y. C. & H. R. R. R. Co.*, 14 App. Div. 351; *E. C. E. S. Co.* v. *Kelley*, 29 Atl. Rep. 423; *Tel. Co.* v. *McMullin*, 55 N. J. 155; *Clark* v. *Holmes*, 7 H. & N. 937.) Evidence contradicting defendant's sworn answer, standing unamended, was clearly incompetent, as it substantially changed the defendant's defense and raised an entirely new issue. (Code Civ. Pro. § 723; *Heath* v. *N. Y. B. L. B. Co.*, 146 N. Y. 260; *Alden* v. *Clark*, 86 Hun, 357.) The proof of plaintiff in this case was given chiefly by servants of the defendant. Their evidence is somewhat conflicting, and this was proper ground for leaving the case to the jury. (*Kuechenmeister* v. *Brown*, 1 App. Div. 56.) As a verdict was directed against the plaintiff, she is entitled to the most favorable inferences that can fairly be drawn from the evidence. (*Doing* v. *N. Y., O. & W. R. Co.*, 151 N. Y. 579; *H. Bank* v. *A. D. & T. Co.*, 148 N. Y. 619; *Raabe* v. *Squier*, 148 N. Y. 81.) Such facts as are in evidence in this case should go to the jury. (*Willy* v. *Mulledy*, 78 N. Y. 310; *Eastwood* v. *R. M. Co.*, 86 Hun, 99; 152 N. Y. 651; *Johnson* v. *S. G. & L. Co.*, 146 N. Y. 160; *Freeman* v. *G. F. P. M. Co.*, 61 Hun, 132; 142 N. Y. 639; *Gaul* v. *R. P. Co.*, 72 Hun, 485; 145 N. Y. 603; *Hawley* v. *N. C. R. Co.*, 82 N. Y. 370.)

*John G. Milburn* for respondent. The defendant's method of fastening the windows of its building was not a violation of the statute requiring the construction and maintenance of fire escapes on the building. (L. 1892, ch. 673, § 6; 13 Misc. Rep. 661.) None of the acts stated in the first question was evidence of negligence on the part of the defendant that should have been submitted the jury. (*Pauley* v. *S. G. &*

*L. Co.*, 131 N. Y. 90; *Jones* v. *Granite Mills*, 126 Mass. 84; *Ruppert* v. *B. H. R. R. Co.*, 154 N. Y. 90; *Bond* v. *Smith*, 113 N. Y. 378; *Taylor* v. *City of Yonkers*, 105 N. Y. 209; *Morris* v. *L. S. & M. S. R. Co.*, 148 N. Y. 182; *Knisley* v. *Pratt*, 148 N. Y. 372.) As the deceased was familiar with' the defendant's method of screwing down the windows and for a long period had worked under and acquiesced in that state of things, as certified by the Appellate Division, he assumed the risks of the situation, and the plaintiff is not entitled to recover. (*Crown* v. *Orr*, 140 N. Y. 452; *Gibson* v. *E. R. Co.*, 63 N. Y. 452; *Knisley* v. *Pratt*, 148 N. Y. 372; *Anthony* v. *Leeret*, 105 N. Y. 591; *De Forest* v. *Jewett*, 88 N. Y. 264.)

GRAY, J. The Appellate Division of the Supreme Court, in the fourth department, has certified to this court certain questions for review, in an action brought to recover damages for the alleged negligence of the defendant, whereby the plaintiff's intestate lost his life. A verdict was directed at the Circuit for the defendant upon the evidence and the Appellate Division, after overruling the plaintiff's exceptions, which were ordered to be first heard there, unanimously ordered judgment to be entered for the defendant.

A brief preliminary statement of the facts, as established upon the trial, will aid in the discussion of the questions certified.

In the evening of April 12th, 1894, the defendant's factory, in the city of Buffalo, was destroyed by fire. The building was eight stories in height and occupied a space of 160 feet on Scott street by 200 feet in depth. The business conducted therein was the manufacture of glucose and the deceased was one of the workmen employed. The fire was alleged to have originated in some defect in the electric plant used for lighting the building. When the fire broke out, the deceased was at work upon the sixth floor and he, with some others, ran down the stairway to the fourth floor; where the thick smoke prevented their further progress. Some of them then broke

through a window and escaped to the ground by a fireman's ladder. The deceased was last seen near the foot of the stair-. way and did not follow his companions to the window. What, in fact, happened then to him is not known and becomes purely a matter of presumption. There were three distinct stairways in this building, leading from the top floor to the bottom floor, and two leading from the top floor to a flat roof. A large covered bridge led from the fifth and sixth floors to an adjoining building, which many of the workmen had been in the habit of using as a means of access to, and of return from, the four upper stories. Upon the outside of the building were three fire escapes, extending from the roof to the ground; two being upon the south and one upon the north walls. Two windows upon each floor opened upon balconies, which were constructed in connection with the fire escapes. In the process of the manufacture of glucose, it was necessary that a high and uniform temperature should be kept up within the factory and, to that end, the windows in the building were required to be kept closed. Directions to this effect being unobserved, at first, strips of wood were so nailed to the sashes as to prevent the windows from being opened; but these having been pried off at times, the more effective means had been resorted to, during the previous autumn, of screwing the sashes together and notices were posted warning the workmen against opening, or breaking, the windows, under penalty of discharge. The windows in the building were constructed with two light sashes, containing, each, four panes of glass about sixteen inches square. The sash frames were from an inch and a quarter to an inch and a half thick. The deceased had been working for the defendant for about twelve years and the knowledge of the employés, as to the fastening of the windows, was testified to by several of the plaintiff's witnesses. When the fire occurred, the fire escapes were made use of by many by breaking through the windows; while some escaped by the stairways, or by ladders. These facts are sufficient to inform us of the situation and to enable us to consider the questions certified. They are,

" 1. Whether the defendant's method of screwing down the windows of the building in which the deceased was employed, so that there was no access to the fire escapes, except by breaking the windows, and forbidding the employees of the defendant engaged in that building from opening the windows, and requiring them to keep a high temperature in the work rooms, such as was necessary to accomplish the business carried on in these rooms, was a violation of the statute requiring a construction and maintenance of fire escapes on such buildings.

2. Whether doing the acts stated in the first question, or any of them, was evidence of negligence on the part of the defendant that should have been submitted to the jury.

3. Whether the deceased, who was familiar with the defendant's methods as stated in the first question, and for a long period had worked under and acquiesced in the conditions stated in the first question, assumed the risks of the situation and whether, by reason thereof, the plaintiff is not entitled to recover in this action."

The statute referred to in the first question, (Laws of 1892, chapter 673, section 6), provided for the manner of construction of fire escapes upon factory buildings and that they should have landings, or balconies, of a certain size, " embracing at least two windows at each story and connecting with the interior by easily accessible and unobstructed openings."

The answer to the first question turns upon the propriety of the resort by the defendant to the methods adopted, to keep the temperature of its factory sufficiently high and uniform. That such conditions were necessary, is the fact assumed by the question and it is conclusive here. Obviously, for their maintenance the windows had to remain closed and the duty of the defendant to its employés, in the face of that necessity, was not to interpose, between them and the means of escape, such a barrier in the description of window constructed, as would prevent a ready passage through them. The proof as to these windows is that they were so light in frame, as to offer but the slightest difficulty in breaking

through; if the time was wanting to unscrew them. The interior of the factory was connected with each balcony upon the fire escape, through windows easily accessible by an unobstructed passage and the requirement of the statute was thus met. If the windows, as "openings," were readily approached from the interior and could be passed through, it cannot be said that the necessity of having to break them, which the testimony showed was easily done, constituted any greater obstruction, than would have been the necessity of uncatching and of lifting them. The reading of the provisions of the statute, upon the subject of fire escapes in factories, must be reasonable and in view of the demands of the case. The construction of the fire escapes must be as prescribed for the outside of the factory building and, unquestionably, that part of the law which requires a connection to exist with the interior is not to be slighted. But, it would be wholly unreasonable to interpret the law as requiring a condition as to the openings upon the fire escapes, which the successful prosecution of the business would forbid. There had to be a closed window during the manufacturing process and, whether it was composed of one sash, or of two sashes fastened together, was immaterial; so long as it was readily removable by breaking through and a ready access to and through it was preserved. The evidence shows that there was no serious obstruction at all to a passage to and through the windows. It must be borne in mind that all questions of fact are to be regarded as settled, with the unanimous affirmance by the Appellate Division, and we must assume every issuable fact in the case as determined below in favor of the defendant. Thus, we have not before us any of the questions, as to which negligence is alleged by the plaintiff; except the one which relates to the defendant's method of preventing its windows from being opened, during the operation of its factory, and, as to that, discussion is largely foreclosed by the assumption of fact that it was "necessary to accomplish the business carried on in these rooms."

The first question certified is answered, therefore, in the negative.

The second question certified must be likewise answered in the negative. The discussion of the first of the questions renders amplification of our views quite unnecessary. If the method adopted by the defendant was not a violation of the statute in question, then there was no evidence of negligence in that respect for submission to the jury. At common law, there was no duty imposed upon the employer to provide fire escapes, in anticipation of the burning of the building in which he employed his workmen. If his building was properly constructed for the purposes of its intended use, such extraordinary and unusual precautions were not demanded of him. The statute of 1887 (Chap. 462) created the absolute duty and its effect was to give a cause of action for its breach, in favor of any one entitled to its observance and injured by a breach. (*Willy* v. *Mulledy*, 78 N. Y. 310 ; *Pauley* v. *S. G. & L. Co.*, 131 id. 90.) For reasons already stated, I am unable to perceive any breach of duty here in the respect certified to us.

It may be observed, as it might have been in our discussion under the first question, that the evidence utterly fails to show that the condition of the windows had anything to do with the death of the deceased workman. It does not appear that he tried ineffectually, or at all, to get through them and the manner of his death is left to surmise from the probabilities of his situation, when upon his reaching the fourth floor, in his descent, he was involved in the smoke.

In considering the third question certified, I think, with the assumption of facts to which the formulation of the question compels us, that but the one answer is possible and that is that the deceased assumed the risks of the situation. An employé is, very reasonably, regarded as assuming those risks in his employment, which are obvious, as well as ordinary. If the master has done all that his duty demanded of him, with respect to securing the safety of his workmen, as to the place where they have been set to work and as to the tools and appliances with which that work was to be done, he will not be liable for a personal injury, occurring by reason of a risk which is incidental to the business itself, or which results from

the dangers of the environment into which the workman knowingly entered, under proper instructions.   In discussing this point, we have to assume that the deceased met his death from a cause connected with the fastening of the windows, without, perhaps, sufficient in the evidence to warrant the assumption.   But the difficulty is not so much in that assumption, as in that found in the question certified.   That compels us to assume the knowledge of the deceased of the defendant's methods and his acquiescence in the conditions under which the work was necessarily done.   The court below has passed upon those facts, with all the force of findings, and the form of the question certified eliminates them from our review.   If the deceased knew the defendant's methods and acquiesced in those resorted to by it in the conduct of its business, we are simply thrown back upon the discussion under the first question; whether there was any violation of the statute in what the defendant did.   Having reached the conclusion that there was none, no other conclusion, in the present stage of the discussion, is possible, than that the defendant added nothing to the risks assumed by its employés and imposed none which they should not be regarded as assuming.

Of course, it is not to be understood from what has been said that it necessarily follows that employés would assume such risks connected with the management of the business, as would result from a violation by the employer of the statute, in a neglect to provide fire escapes.   That presents a different question.

The first two of the questions certified are answered in the negative and the third question is answered in the affirmative and it, therefore, follows that the judgment appealed from must be affirmed, with costs.

All concur, except HAIGHT, J., absent.

Judgment affirmed.