(39 App. Div. 133.)

BAXTER'S ADM'X v. CHARLES F. PARKER & CO.

(Supreme Court, Trial Term, Niagara County. March, 1898.)

1. INJURIES TO SERVANT—DUTY OF MASTER.
   Where master furnishes reasonably safe appliances and place for work, with competent servants in charge, he is not liable for an injury resulting from the failure of those in charge to properly carry out the details of the work.

2. SAME—FELLOW SERVANT.
   The grade of the co-servant whose negligence in directing the work caused the accident has no bearing in determining the master's liability, as it is the character of the act of the co-servant that fixes the master's liability.

3. SAME—ASSUMPTION OF RISK.

    A servant engaged in clearing away débris after blasting, with knowledge that cartridges were left unexploded after nearly every charge, assumed the risk of injury from contact with undischarged dynamite.

4. SAME—FELLOW SERVANT.

    A servant inspecting a place where blasting is in progress, for the purpose of discovering unexploded charges, is a fellow servant of one engaged in clearing away the débris, and who is injured by coming in contact with an unexploded charge.

Action by the administratrix of one Baxter against Charles F. Parker & Co. to recover for personal injuries. Verdict for plaintiff, and motion by defendant for new trial. Granted.

D. E. Brong, for plaintiff.

A. K. Potter, for defendant.

SPRING, J. The plaintiff's intestate was killed while in the employ of the defendant, who was fulfilling its contract with the state in deepening the Erie Canal through the city of Lockport. The performance of the contract required the breaking up and removal of solid rock by means of cartridges containing high explosives. The manner of doing the work was to drill holes seven to eight feet in depth into this rock, covering a considerable space, and then to charge each of these holes with a cartridge, and to fire it off by means of electricity generated from a battery provided for that purpose. Thirty to forty of these holes were drilled for each touching off, all connected together and with the battery, and the explosives were of so high a grade that it was followed in each instance by a terrific severing and upheaval of the rock composing the bed of the canal. In this perilous work it seems to have been unavoidable that some of the cartridges would fail to explode, and covered, as they were, with the débris, it was very difficult to discover them. The drilling and blasting were under the charge of a foreman named Leonard. For upward of 20 years he had been engaged in a similar work and on a large scale, and often as foreman, and was competent for the business, and was well recommended to the defendant for his skill and efficiency, so that the question of his ability to discharge his duties was not submitted to the jury. After each explosion it was the duty of the foreman to go over the upheaved rocks and ascertain and note any cartridges discoverable that were undischarged. Leonard apparently fulfilled this duty after the blast in question, but it is evident that at times the closest inspection would fail to reveal those hidden perils. After the blasting, a gang of 200 or 300 men, designated as the muckers, came along and removed the largest pieces of the rock, and any unexploded cartridges they found were taken out, and some time after this another gang of men, called the levelers or graders, removed the balance of this loosened rock. These men used picks to loosen up these stones which were wedged together by the force of the upheaval and by their own weight, and there was great hazard in this work, as a stroke from a pick on an unexploded cartridge or chunk of dynamite would be followed by a discharge. The plaintiff's intestate belonged to the gang of levelers or graders, and had been employed on the work for at least two months. The finding of unexploded cartridges and pieces

of dynamite sticks were daily occurrences, and the men generally were cautioned to watch out for these perils, and the decedent knew the dangers incident to this work, and must have known that these cartridges existed undischarged after nearly every blast. On the day in question the intestate, Baxter, was engaged with his fellow workmen composing the graders' gang in picking out these loose stones, when one of the cartridges exploded, causing a terrific upheaval, killing Baxter, and injuring several of the men employed with him. The mucking gang and the graders' gang were under the supervision of different foremen, and were in a measure independent of each other, although the men composing the two gangs were interchanged somewhat. The case was submitted to the jury on the theory that it was a question for the jury to determine—First, whether the defendant fulfilled its duty of furnishing a safe place for the intestate to work; and, second, the corollary of this proposition, whether or not Leonard properly inspected the results of his blasting for the purpose of discovering and locating any undischarged cartridges that were quite certain to be left after he had fired off the circuit connected with the battery.

While there was a charge made that the electrical appliances used in this blasting were defective or inadequate, yet the proof warranted no such inference, and certainly no negligence can be attributed to the defendant on account of the failure of these instruments to cause every cartridge to explode. The officers of the defendant purchased their explosives and appliances of well-known and reputable firms dealing in these supplies, and the evidence unquestionably established their excellence and sufficiency for the purpose designated. Whatever there was to make the place dangerous was due to the prosecution of the work. The bed of the canal, in and of itself, was a safe place; but the breaking up of the solid rock and piling it up, covering undischarged cartridges, made the prosecution of the work by the men cleaning away these rocks dangerous in the extreme. Was the defendant responsible for this condition, to the extent that it comes within the compass of the rule requiring it to furnish a reasonably safe place for plaintiff's intestate and his fellow workmen? The distribution of the men was left to the several foremen. Whatever division there was into gangs was made for convenience and to carry on the work more advantageously. None of the labor required skilled men. It was simply clearing away the débris after the explosion, and the evidence unmistakably establishes that the workmen must have possessed as much knowledge of the perils connected with the business, and of the existence of the dynamite sticks and unexploded cartridges, as the foreman or the most skilled expert. They were seen daily, and the plaintiff's decedent, in the two months in which he was engaged in this hazardous employment, had abundant opportunity to acquaint himself with all the dangers attending the carrying on of the work. This unfortunate accident happened, therefore, not from any failure to furnish adequate appliances for the prosecution of the work, and not from any omission to engage experienced men in charge. If any negligence existed, it was in the failure to carry out the details of the work properly, and for that the master is not liable. Hogan v. Smith, 125 N. Y. 774, 26 N. E. 742; Cullen v. Norton, 126

N. Y. 1, 26 N. E. 905.    The grade of the co-servant directing the work does not have any bearing in the determination of this question. Loughlin v. State, 105 N. Y. 159, 11 N. E. 371; Connolly v. Maurer, 6 Misc. Rep. 98, 26 N. Y. Supp. 18; Hussey v. Coger, 112 N. Y. 614, 20 N. E. 556.    It is the nature of the work done, the character of the act, which constitutes the test, not the man who does it.    The plaintiff's intestate knew he was in a hazardous business.    The particular danger apparent to every one was the liability to come in contact with undischarged dynamite.    This danger was unavoidable, and he and the foreman were alike ignorant of where these cartridges were lying. This risk was an incident to the business assumed by him.    Crown v. Orr, 140 N. Y. 450, 35 N. E. 648; Mancuso v. Construction Co., 87 Hun, 519, 34 N. Y. Supp. 273; Huda v. Glucose Co., 154 N. Y. 474, 481, 48 N. E. 897.    The master fulfilled his duty to his workmen when he furnished adequate appliances, competent foremen, and a place in its natural state safe for the men.    After that, the details of the enterprise must of necessity be developed by the men themselves; and, if there was any negligence, it was that of a co-servant, and not chargeable to the master.    The position taken by the trial court, that it was for the jury to pass upon the sufficiency of the inspection made by Leonard, is untenable—First, if such inspection was carelessly made, that carelessness cannot be imputed to the defendant; and second, the evidence does not show that the most circumspect examination would have revealed these undischarged cartridges, covered up as they were.

A new trial is ordered, with costs to abide the event.