All concurred, except WILLIAMS, J., who dissented, and STOVER, J., not sitting.

Judgment reversed and warrant of attachment vacated, with costs.

---

ROBERT A. PELIN, as Administrator, etc., of ERNEST D. PELIN, Deceased, Appellant, v. THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Respondent.

*Negligence — injury to an engineer from a collision with a train, the crew of which has worked "for more than twenty-four consecutive hours" in violation of the Labor Law.*

In an action brought to recover damages resulting from the death of the plaintiff's intestate, it appeared that at the city of Oswego at three A. M. on April 4, 1901, the defendant railroad company called a crew to take a freight train a distance of thirty-five miles and return; that by reason of an accumulation of freight and other obstacles the train was much retarded and on its return trip arrived at Hannibal about two o'clock on the following morning, where it was sidetracked to permit the passing of a train known as the Wabash Flyer which was due at the station about four-twenty, but was about thirty minutes late; that on the morning in question the flyer was being operated in two sections.

The engineer of the locomotive drawing the first section testified that there were green markers on his locomotive denoting that he was followed by a second section and that as he passed the freight train he gave the signal blasts which were intended to inform the crew of the freight train that the second section was following. After the first section of the flyer passed, the freight train was run on the main track where it collided with the second section of the flyer, in consequence of which the plaintiff's intestate, who was a fireman employed on the locomotive attached to the second section, received injuries from which he died.

The fireman on the freight train testified that he was asleep when the first section of the flyer came along and that he was awakened by it, but that he did not see the green markers or hear the signal blasts. He testified that when he awoke the engineer of the freight train was sitting in his place with his head on his arm, but that the witness did not know whether or not he was asleep. The engineer of the freight train testified that he was awake, but that he did not hear the signal blasts or observe the markers on the locomotive attached to the first section of the flyer,

Section 7 of the Labor Law (Laws of 1897, chap. 415) provides as follows: "No person or corporation operating a line of railroad of thirty miles in length or over, in whole or in part within this State, shall permit or require a conductor, engineer, fireman or trainman, who has worked in any capacity for twenty-four consecutive hours, to go again on duty or perform any kind of work, until he has had at least eight hours' rest."

*Held*, that a judgment dismissing the plaintiff's complaint should be reversed;

That the reasons which impelled the railroad company to violate the statute quoted were immaterial, and that such violation constituted proof of negligence on its part;

That a railroad company, which violates the statute quoted, runs the risk of liability for any personal injuries sustained by its employees which are the proximate result of exhaustion or inattention caused by working overtime;

That, in the case at bar, the jury might properly find a causal connection between the violation of the statute and the collision.

McLennan, P. J., and Stover, J., dissented.

Appeal by the plaintiff, Robert A. Pelin, as administrator, etc., of Ernest D. Pelin, deceased, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Oswego on the 12th day of April, 1902, upon the dismissal of the complaint by direction of the court after a trial at the Oswego Trial Term.

The action was commenced on the 23d day of November, 1901, to recover damages sustained by the next of kin of plaintiff's intestate because of his death, alleged to have been caused solely through the negligence of the defendant.

*D. P. Morehouse*, for the appellant.

*Henry Purcell*, for the respondent.

Spring, J.:

The plaintiff's intestate, a fireman on an engine of the defendant, was killed at a collision at Hannibal in this State.

The men composing the freight crew were called at Oswego by an agent of the defendant before three o'clock in the morning of the 4th of April, 1901, to take their train, which was expected to leave at four-thirty that morning, although in fact it did not get away until some time later. The trip was a short one — only to Wallington, a distance of thirty-five miles, and return. By reason of an accumulation of freight and other obstacles the train was much retarded, and on its return trip arrived at Hannibal station about

two o'clock the following morning. After unloading some freight at that place the train was run onto a siding to await the passage of the Wabash Flyer, which was a west-bound passenger train due to pass Hannibal about four-twenty, but on that morning arrived about thirty minutes late.

The engineer of the flyer testified that there were signals or markers on his engine denoting that he was followed by a second section, and he further testified that as he passed the freight train he gave the blasts which also were intended to inform the crew of that train that a second section was behind. After the flyer passed the freight train was run on the main track and collided with the second section mentioned and which consisted only of a light engine with tender, and Pelin, the plaintiff's intestate, who was the fireman on that engine, received injuries from which he shortly died. The fireman on the freight train testified that he was asleep when the flyer came along and was awakened by it, but did not see the markers or hear the signal blasts. He testified that when he awoke the engineer was sitting in his place with his head on his arm, but the witness did not know that he was asleep. The engineer testified that he was awake, but did not hear the signal blasts or observe the signal markers on the front of the engine of the flyer. One Murray accompanied the freight train from Oswego to Wallington and then joined the crew on its return trip as a fireman, and he testified that he was asleep in the caboose, but was awakened by the whistling of the approaching flyer before it reached the station. By his subsequent testimony the witness leaves it somewhat uncertain whether he was asleep or awake at the time the train approached.

Section 7 of chapter 415 of the Laws of 1897, so far as pertinent, reads as follows: "No person or corporation operating a line of railroad of thirty miles in length or over, in whole or in part within this State, shall permit or require a conductor, engineer, fireman or trainman, who has worked in any capacity for twenty-four consecutive hours, to go again on duty or perform any kind of work, until he has had at least eight hours' rest."

The crew of this freight train had been in service continuously from three o'clock in the morning of April fourth until the time of the accident, which was about five o'clock in the morning of April fifth. They had, therefore, worked for more than "twenty-four con-

secutive hours," and were starting to complete their return trip to Oswego when the collision occurred. They were, therefore, *performing work* after the lapse of twenty-four hours' continuous employment for the defendant, and that successive uninterrupted service was precisely what the statute quoted was designed to prevent.

The statute is for the protection of employees liable to be injured by the carelessness or oversight of coemployees caused by exhaustion induced by long-continued application to work. The intention of the employer or its agents is of no importance in the construction of this statute. In this instance they may have reasonably anticipated that the train would reach Oswego on its return trip within twenty-four hours of its departure from that city, but the liability if any arises from the existence of the overtime employment forbidden by the statute and is mitigated in nowise by the motives or reasons which impelled the infraction of the law.

A railroad company with a crew out on a train for more than twenty-four hours may elect to have the trip completed by the same crew. If so it runs the risk of liability for any injuries sustained by any of its coemployees, and which is the proximate result of exhaustion or inattention caused by such working overtime. The defendant's agents at all times keep in touch with the movements of its trains and can readily regulate and control them. They, therefore, *permitted* this crew to perform work in continuing its trip to Oswego although the men had already been more than twenty-four consecutive hours in its employment.

The jury had a right to say that the fact that the fireman was asleep was due to over-exhaustion by reason of his protracted employment, and that the collision might not have occurred had he been in his normal wakeful condition. The engineer may not have been asleep when the train approached. He did not hear the signals of warning or see the signal markers, the significance of which he well understood. His omission to see or hear these signals the jury may have found was due to his exhaustion, superinduced by his application to work for more than twenty-four hours without cessation. It is not necessary for the plaintiff to prove that the engineer was asleep. If by reason of his dazed mental condition, caused by his protracted employment beyond the limits of the time fixed by the statute, he was unable to apprehend clearly his duties,

and the collision thereby resulted, then the case is within the compass of the statute.

The jury may also have found the causal connection between the violation of the statute and the collision.   The bare fact of the performance of the work prohibited, with the injury resulting, is proof of negligence.   In *Marino* v. *Lehmaier* (173 N. Y. 530), in construing section 70 of the Labor Law (Laws of 1897, chap. 415), which had been infringed, this language occurs (at p. 535): " Our attention, however, has been called to no statute prohibiting the doing of an act which is dangerous to the life or health of others, in which it has been held that the jury may not find negligence and a liability for damages resulting from the doing of the prohibited act."

A breach of this statute gives a cause of action to one injured by reason of its violation.   ( *Willy* v. *Mulledy*, 78 N. Y. 310 ; *Stewart* v. *Ferguson*, 164 id. 553.)

In the interpretation of a statute of this kind it is essential to keep in mind the purpose of its enactment.   An employee is debarred from recovering for injuries sustained through the negligence of a fellow-workman.   With that protection to the employer, the Legislature deemed it just, therefore, to the workman to safeguard the employment by requiring that the efficiency of coemployees be kept at a fairly high standard.   One of the means in securing that object was to put a restriction upon the consecutive hours a conductor, engineer, fireman or trainman was to be on duty. The danger of the employment and the wisdom of reducing peril to a minimum as far as might be accomplished by statutory safeguards also induced the legislation and it should be given a reasonably liberal construction to make effective the praiseworthy purpose sought to be obtained by its observance.

The judgment should be reversed and a new trial ordered, with costs to appellant to abide the event.

WILLIAMS and HISCOCK, JJ., concurred; McLENNAN, P. J., dissented in an opinion in which STOVER, J., concurred.

McLENNAN, P. J. (dissenting):

On the 5th day of April, 1901, plaintiff's intestate was, and for some time previous had been, employed by the defendant as a locomotive fireman.   At about four o'clock in the morning of that day

a light engine upon which he was fireman started from the city of Oswego going west on defendant's railroad, running as the second section of train No. 110, or the "Wabash Flyer," so called. Such engine or second section following the flyer was required by the rules of the defendant to keep at least five minutes behind it. Upon the front of the engine drawing the flyer or train No. 110 there were two green lights, one on each side, which by the rules of the company indicated that it was being followed by a second section. At the time in question a freight train headed east was standing on a siding at the Hannibal station. The crew of such freight train, consisting of the engineer, fireman, conductor and two trainmen, did not observe the green lights in front of the engine of the flyer which indicated, as we have seen, that a second section was following, and immediately after the flyer passed the station at about four-forty-five A. M., the freight train was run onto the main track and was proceeding east on its way to Oswego. It had not gone on the main track to exceed twenty or thirty rods when the light engine upon which plaintiff's intestate was fireman came around a curve and came into collision with the engine of the freight train and he was injured in such manner as to cause his death a few days later. The evidence tends to show that the crew of the freight train failed to observe the green lights on the engine of the flyer and thus to note that a second section was following, because such crew, or at least the fireman, whose especial duty it was to look out for and observe the same, was asleep, and that the accident resulted because of his failure and that of his associates to observe such lights, and because the crew of the freight train did not know that a second section of train No. 110 was following the first section, and, therefore, went onto the main track directly in front of the rapidly approaching second section, and so notwithstanding the evidence tends to show that the whistle upon the engine of the flyer was sounded in such manner as to indicate that it was approaching and was to pass the Hannibal station.

There is no suggestion that the rules of the defendant governing the operation of the trains in question were defective ; that the employees upon both trains were not entirely familiar with them, or that they were not entirely adequate to protect such employees against an accident like the one in question if they had heeded and

obeyed them.   Neither is there any suggestion in the evidence that any
of the employees were not competent and experienced railroad men.

The sole ground of negligence on the part of the defendant urged
by the learned counsel for the appellant is that the defendant had
violated section 7 of chapter 415 of the Laws of 1897 in that it had
required and permitted the conductor, engineer and fireman in charge
of the freight train to work for more than twenty-four consecutive
hours ; that as a result of such continued work those men became
exhausted, incapable of properly discharging their respective duties,
and for that reason failed to observe that a second section was follow-
ing the first section of the flyer or train No. 110, and that the accident
resulted because of such exhaustion and incapacity.   Plaintiff's counsel
in his points does not argue or claim that the charge of actionable negli-
gence against the defendant can be sustained upon any other theory.

It appears that the crew of the freight train were called for duty
in the city of Oswego, where they resided, about or shortly before
three o'clock in the morning of the fourth day of April, to prepare
to take the freight train in question, composed of an engine, tender
and fourteen cars, to Wallington, a station on defendant's road
thirty-five miles westerly from the city of Oswego.   The freight
train was not got ready until seven-twenty A. M., when it started
with its regular crew.   The only work to be done in going from
Oswego to Wallington was to cut out and leave at Hannibal one car.
The train reached Wallington about noon and while there the crew
got an order to do some switching, which they did.   After such
switching was done they waited for orders and finally left for Oswego
at six-fifteen P. M. upon receiving orders so to do, then having a
train composed of an engine, tender, twenty cars and caboose.   At
Wallington two additional brakemen were taken on so that on the
return trip the crew consisted of the engineer, fireman, conductor
and four trainmen.   Stops were made at the different stations
between Wallington and Hannibal and switching done.   The train
arrived at Hannibal about two A. M.   Freight was unloaded there
and several cars were switched.   After that work was done the
freight train went onto the siding to wait for the flyer to pass ; the
conductor and trainmen went into the caboose, the engineer and
fireman remained on the engine, and, as we have seen, the evidence
tends to show that the fireman, and perhaps others of the crew, went

to sleep. At least, when the flyer passed none of the crew observed the green lights on the engine, which indicated that a second section was following, and so moved the freight train out upon the main track and started for Oswego, when, after proceeding a few rods, the collision occurred.

The run from Oswego to Wallington, a distance of thirty-five miles, as a rule did not take to exceed three hours. The round trip was usually made in much less time than upon the day in question. Upon that day additional time was consumed because of an accumulation of freight at Wallington and other stations, resulting from a severe snow storm which had occurred some time previous. The crew of the freight train before leaving Oswego on the morning of April fourth had had ample time and opportunity for rest; so far as appears, the full time, eight hours, mentioned in the statute. None of them complained of having been overworked or that they were exhausted, and no complaint of that kind was made by any member of the crew while on the trip and before the accident. The defendant had plenty of other men in its employ to take the place of any member of the crew of the train in question if he had asked to be relieved, or if informed that he was exhausted or for any reason incapacitated from performing his work, and upon such information coming to the defendant it always furnished additional or other men to operate its trains.

The foregoing facts, which we think the evidence tended to prove, it is urged establish actionable negligence on the part of the defendant when considered in connection with the provisions of the statute to which attention has been called. (Laws of 1897, chap. 415, § 7.) The act provides as follows: "No person or corporation operating a line of railroad of thirty miles in length or over, in whole or in part within this State, shall permit or require a conductor, engineer, fireman or trainman, who has worked in any capacity for twenty-four consecutive hours, to go again on duty or perform any kind of work, until he has had at least eight hours' rest."

It is well settled that a violation of a statutory duty or requirement is evidence of negligence and gives a cause of action in favor of any one entitled to its observance who is injured by its breach. (*Marino* v. *Lehmaier*, 173 N. Y. 530; *Willy* v. *Mulledy*, 78 id. 310; *Huda* v. *American Glucose Co.*, 154 id. 474.)

We think, if the statute in question is given a fair and reasonable interpretation, it cannot be said upon the evidence in this case that the defendant was guilty of a violation of its provisions. Its purpose was to prevent a railroad company from sending out a train with a crew of men who had not had at least eight hours of rest after having worked for twenty-four consecutive hours. We think the Legislature did not intend to provide that if a railroad company sends out a train manned with a proper crew to make a trip which is usually made in twelve hours, but which by reason of unusual or unforeseen conditions occupies more than twenty-four hours, it should be under the necessity of stopping the train at any point where it might be at the expiration of such twenty-four hours and supplying it with another crew in order to relieve itself from the charge of violating the statute. In the case at bar was the duty imposed upon the defendant to hold the freight train in question at Hannibal until it could send another crew to bring it to Oswego, a few miles distant? It seems to me that such interpretation would be unreasonable in the extreme. The defendant was not liable simply because it permitted or directed the crew of the freight train to finish the trip and bring their train home. If, after such trip was finished, the company had required or permitted any one of such crew to perform any kind of work, it would undoubtedly have been a violation of the statute. The crew of the freight train were engaged, we will assume, for more than twenty-four consecutive hours attempting to make a round trip of seventy miles; they were occupied for such length of time because of unusual conditions which the defendant could not reasonably anticipate, and we think it was not chargeable with a violation of the statute and, therefore, guilty of negligence because it permitted such crew to attempt to complete the trip and bring the train to its destination, even after the lapse of such period of twenty-four hours.

It follows, I think, that the nonsuit was right, and that the judgment appealed from should be affirmed, with costs.

STOVER, J., concurred.

Judgment reversed and new trial ordered, with costs to the appellant to abide event.