covers the proposition for which they are cited as authorities. In each one of them the cause of action was not covered by the language of the statute in question, and was primarily and exclusively one at common law. The language of the statute in question covers the cause of action pleaded in this action and proved at the trial. That such a cause of action did exist at common law is not exclusive of plaintiff's right to maintain it under the statute. While the statute in question created liabilities that did not exist at common law, it also, by section 3, gave to a plaintiff who maintained an action under its terms certain advantages or privileges not granted to those who did not avail themselves of its terms. By giving the notice required by section 2 of the act, he intended to so inform the defendant that he proposed to avail himself of all the privileges granted by the act. To adopt the construction asserted by the appellant, the language of subdivision 1 of section 1 of the statute, relating to the negligence of an employer, would have to be eliminated from the statute. I can see no reasonable basis on which such process of elimination could be made to rest.

I recommend, therefore, affirmance of the judgment and order, with costs. All concur.

---

REINERTSEN v. ERIE R. CO.

(Supreme Court, Appellate Division, Second Department. December 30, 1910.)

1. MASTER AND SERVANT (§ 203*)—RISKS ASSUMED BY EMPLOYÉ.

An employé, impliedly representing himself as competent for his duties, assumes the risks incident to the employment in the absence of contrary provision, including risks existing or arising notwithstanding the exercise of ordinary care by the employer.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 538–543;  Dec. Dig. § 203.*]

2. MASTER AND SERVANT (§ 216*)—RISKS ASSUMED—NEGLIGENCE OF FELLOW EMPLOYÉS.

An employé does not assume the risks arising from the incompetency of his fellow workmen, but, the employer having used the required care in selecting and continuing employés, a particular workman takes the risk of their negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 567–573;  Dec. Dig. § 216.*]

3. MASTER AND SERVANT (§ 219*)—RISKS ASSUMED—OBVIOUS DANGERS.

An employé assumes risks obvious or discoverable in using ordinary care, though arising from the employer's negligence, especially habitual negligence, but an employé need not anticipate negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 610–624;  Dec. Dig. § 219.*]

4. MASTER AND SERVANT (§ 219*)—RISKS ASSUMED BY EMPLOYÉ—OPPORTUNITY TO OBSERVE DANGERS.

The rule that an employé assumes risks obvious or discoverable in using ordinary care is subject to the condition that he be given fair opportunity to observe and act.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 610–624;  Dec. Dig. § 219.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

5. MASTER AND SERVANT (§ 219*)—RAILROADS—EMPLOYÉS NEAR TRACK—AS-
SUMPTION OF RISK.

A railway carpenter employed in nailing planks between tracks in
terminal yards assumed the risk of being struck by a passing engine,
where he knew that he was not guarded by a watchman, and undertook
to rely on his own watchfulness.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§
610–624; Dec. Dig. § 219.*]

Appeal from Trial Term, Queens County.

Action by Michael Reinertsen against the Erie Railroad Company.
From a judgment for plaintiff and from an order refusing a new trial,
defendant appeals. Reversed, and new trial granted.

See, also, 66 Misc. Rep. 229, 122 N. Y. Supp. 998.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS,
THOMAS, and RICH, JJ.

F. B. Jennings (W. C. Cannon, on the brief), for appellant.
George F. Hickey (M. P. O'Connor, on the brief), for respondent.

THOMAS, J. The servant has sued the master for injuries re-
ceived through the latter's breach of common-law duty, and recovered
judgment. The plaintiff, a carpenter, nailing planks between tracks
in defendant's terminal yards in Jersey City and kneeling at his work
for that purpose, was hit by a passing engine and seriously injured.
The negligence charged is that the master did not furnish a safe
place to work by issuing and enforcing a rule that a person should
be stationed to give the plaintiff and his associate workmen due no-
tice of approaching cars. The defendant gave evidence that it had
such rule, according in its scope with the rules and practices of other
railroad companies; that it was made and kept effective by the des-
ignation of a person to act only as signal man for which he received
extra compensation; and that the accident happened during the brief
absence of the person designated after he had given the men warn-
ing to use care for their protection. But the plaintiff's evidence tends
to show that no signal man had been provided or acted during his
service from April 2d to May 8th, the day of the accident. Indeed,
the plaintiff testified: "I had to rely on my own watchfulness, and
not on any one who was there to tell me or warn me when those
engines were coming." Finally, Strong, a member of the gang of
foremen employed at the place in question, and the man to whom was
ascribed the status of subforeman and watchman, disclaimed any
capacity as watchman, and made himself only a working carpenter in
the gang. So the plaintiff by the verdict of the jury sustained his
contention that no watchman was ever provided, that he knew it, and
accordingly looked after himself and had done so for some six weeks.

In such case what is the common law? The plaintiff urges, in ef-
fect, that the plaintiff assumed only such risks as remained after the
master had performed his duty to make the place safe. The rule,
imperfectly stated, has no present application, and requires clearer
understanding of its meaning than sometimes exists. When the serv-
ice begins, the servant, inferably representing himself as competent

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

for his duties is deemed to assume the risks incident to the business in the absence of modification of such presumed obligation, and further risks later considered. Then the first question is: What are the risks incident to a business? Are they all risks that may accrue from the business protected by no attempted safeguards, or the risks that exist or will arise in a business, notwithstanding the exercise of ordinary care on the part of the master to make the undertaking in place and appliance reasonably safe? Clearly the latter. Differing modes of expression have been used, but by tracing back from authority to authority the rule above stated will be reached. Dana v. New York Central & Hudson River Railroad Co., 92 N. Y. 639. Illustrations will aid. It is the duty of the master to use the requisite care in the selection and continuance of servants, and thereupon a servant takes the risk of his co-servant's negligence. Here it is apparent that the master's first duty precedes in time the assumption of risk as to the servants employed, and that the master's continuing duty concurs in time with the assumption of risk, but their obligations are not interdependent, for the servant does not assume the risks arising from incompetency of his fellow servant. Slater v. Jewett, 85 N. Y. 61, 73, 39 Am. Rep. 627. It was decided that a master should use care to ascertain the condition of the bin of a large grain elevator before commanding a servant to enter it and thereby casting upon him risks expectable in some form, but ascertainable and reducible by inspection and consequent provision to lessen or to avoid them. The law did not cast on an innocent servant the whole risks undiminished by the master's caution. McGovern v. Central Vermont Railroad Co., 123 N. Y. 280, 287, 289, 25 N. E. 373. Necessarily the performance of the master's duty in that case preceded the servant's particular work and the assumption of the risk accompanying it, so far as the entering of the bin on the occasion in question is concerned. Now, this holding, although not presenting the complete rule, means only that the master cannot in the first instance cast the risks of his business upon his servants by himself using less care than the law exacts of him. A car repairer, going to his work on and among railroad tracks, knows that his environment will be dangerous, but he has, unless he has actual or constructive notice to the contrary, the legal right to expect that he will be confronted by only such risks as the care required of the master, in making and enforcing rules and providing other safety expedients, does not remove or diminish. Abel v. President, etc., D. & H. Canal Co., 128 N. Y. 662, 28 N. E. 663; Dowd v. N. Y., O. & W. Ry. Co., 170 N. Y. 459, 467, 63 N. E. 541. But this rule does not mean that the servant assumes no risks as to matters within the scope of the master's duty. He begins to assume risks at the instant his service begins. What are they? They are (1) the servant's risks incident to the business, as illustrated above; (2) the risks obvious or discoverable in the exercise of ordinary care from whatever cause arising. The first class of risks has been considered. The second class may be illustrated. Suppose the servant sees something palpably dangerous, or assume that there is something menacing discoverable in the exercise of care that a man of ordinary

prudence uses in going about his work and doing it, and that the condition arose from the negligence of the master, then the servant shall not shut his eyes to it and incur its perils. It is a danger that looks him in the face and obstructs his work, and if he, unconstrained, and by the master uninfluenced, knows the peril of it and keeps going within the reach of it, he takes the risk of it. The danger may come from the master's first and only negligent act or omission, and, if the servant sees or should perceive the risk of it, he owes himself, the duty of self-protection. So much the more if the master's habitual negligence has made dangerous the servant's discharge of his duties. This does not mean that the servant is solicitously and eagerly to watch, lest his master be negligent, and he be hurt thereby. His trust in his master's fidelity to his duty may be somewhat measured by the duty, and the known facts and conditions that are present. But when the condition, whether or not arising from the master's negligence, is known or should be known to persons using their senses, as men ordinarily prudent usually do, then the servant's duty arises and the burden falls on him to look out for himself. It is not necessary in the present case to make careful explanation of the scope of the words "discoverable in the exercise of ordinary care." Indeed, so infinite are the varieties of facts that it is impossible to be precise. But there is involved the expectation that no man will or can go about his business with his eyes shut and indifferent to his surroundings, and that, even though the law furnishes him certain protection by imposing duties upon the master, there is a margin of danger to which he is exposed, even that arising from his master's negligence, and that if he sees danger, however happening, he will not expose himself to it, and that, if danger exists that will come under the observation of a person going about his work with ordinary circumstances, he will discover and avoid it. Crown v. Orr, 140 N. Y. 450, 452, 35 N. E. 648. But there is one fundamental condition of the servant assuming this class of risks. He must be afforded a fair opportunity in time and circumstance to make observation and act upon it. Every master, unless forbidden by statute or agreement with his servant, has the right to use his own methods of work and select his own appliances therefor. But, when he employs a servant, he must give him a fair chance to know it, if such methods or appliances fall below the protection which the law demands him to afford. But if the servant know, either at the time of entering the employment, or discover thereafter, the master's departure from legal duty, the servant assumes the risk of it. So a farmer may use horses or wagons or other equipment, or utensils, that through his neglect are not safe in the hands of the man hired to use them, but if the latter knows of the breach of duty towards him, and that his master furnishes what due care would condemn, the servant must make his choice to go on, or to stop, in the absence of necessity, constraint, promise, or statement on the part of his master compelling or justifying that he abide by or confront the danger. What has been said will be found illustrated by decisions. Huda v. American Glucose Co., 154 N. Y. 474, 482, 48 N. E. 897, 40 L. R. A. 411; Maltbie v. Belden, 167 N. Y. 307, 312, 60

N. E. 645, 54 L. R. A. 52; Williams v. D. L. & W. R. R. Co., 116 N. Y. 628, 22 N. E. 1117; Kaare v. Troy Steel & Iron Co., 139 N. Y. 369, 34 N. E. 901; Dowd v. N. Y., O. & W. Ry. Co., supra, 170 N. Y. 470, 63 N. E. 541.

If the rule of the assumption of risk be applied to the plaintiff, there must be decision against him. He knew that the place was dangerous. He knew that he was not guarded by watchmen, and was so appreciative of this neglect and the peril to which it exposed him that he watched for himself, and, although so near a rail as to invite collision with a passing locomotive, he watched so indifferently as to remain in the way when it came. There was no stress of duty, action, or obedience that diverted or impaired the watchfulness that he owed to himself. His master, to his own knowledge, had left its obligation unfulfilled and cast upon him the duty of self-preservation, and he was injured by reason of his failure to perform this duty which had fallen to him and which he had assumed. The facts could no more clearly demand the application of the doctrine of the assumption of risk.

The judgment and order should be reversed, and a new trial granted, costs to abide the event. All concur.